EDWARD MCDONOUGH v. DOCTOR NEWTON M. FREUND, Appellant.— 19 S. W. (2d) 285.

Division One, July 30, 1929.

348

*Watts & Gentry* and *Wm. H. Woodward* for appellant.

*John A. Witthaus* for respondent.

352

GANTT, J.—Action for damages for malpractice. Plaintiff is a hod-carrier and defendant a physician; both reside in St. Louis. Plaintiff was afflicted with a boil or carbuncle, located on the under side of the right arm, one and one-half inches above the wrist. On June 19, 1922, he went to the office of defendant for treatment, and defendant undertook to treat the boil or carbuncle. Infection spread into the wrist and hand, involving the bones and leaving the hand badly crippled.

It is charged the defendant in opening the boil (a) negligently cut and failed to tie the radial artery; (b) negligently caused infection in the wrist and hand; and (c) negligently failed to arrest the progress of the infection. The answer is a general denial. The case was submitted to the jury on these charges. Judgment was for $10,000, and defendant appealed.

Defendant contends the demurrer to the evidence at the close of the case should have been sustained.

(a) There is evidence tending to show the boil or carbuncle was located over the radial artery and its branches, and that defendant, after making the incisions, stated he had cut an artery; that the scar on plaintiff's arm is directly over the radial artery, and if an artery was cut at the point of the scar it was the radial artery; that the cutting should have been lengthwise whereas the scar indicates it was crosswise, which tended to increase the risk of cutting an artery; that it is bad practice to cut an artery when lancing a boil or carbuncle; that there were several incisions made, and defendant jerked or twisted the knife while making them; that the cutting of an artery would be very disastrous, because the blood supply to the hand would be diminished and the hand made more susceptible to the spread of infection.

There is also evidence tending to show that if the radial artery is cut an attempt should be made to tie it if the bleeding point of the artery can be seen. Defendant testified he made no attempt to tie the artery cut, claiming it was better practice to use a tourniquet and packings.

This is ample evidence to support the charge that defendant negligently cut and failed to tie the artery, and that such negligence contributed to the injury by diminishing the resistance to infection. This conclusion also rules the same contention lodged against instruction numbered 1.

(b) There is evidence tending to show that defendant made the incisions with an unsterilized knife which might cause a poisonous condition, and that a good surgeon would not do it. There is also evidence tending to show that plaintiff's wrist and hand were not swollen and infected at the time he became a patient of defendant; that a few days thereafter his hand and wrist began to swell and continued to do so as the infection spread; that after defendant opened the boil or carbuncle he probed the opening for about three-quarters of an hour with forceps, endeavoring to catch the end of the artery and tie it; that such probing would tend to break through nature's wall inclosing the infection, thereby permitting the infection to spread, and that it should not be done unless the bleeding point of the artery can be seen.

Defendant testified that he did not use an unsterilized knife; that he inserted tweezers into the opening to allow a free outlet for pus and probed with a metal probe for hidden pockets of pus; that it is not good practice to tie an open artery because it might cause too much handling, and that it is easier to pack the wound.

This is substantial evidence tending to show that defendant negligently caused infection in the wrist and hand.

354

(c) There is evidence tending to show that a few days after defendant commenced to treat plaintiff the hand was badly swollen, and defendant made two openings on top of the hand from the wrist downward, put gauze in the openings for drainage purposes and applied a bichloride of mercury pack; that each morning defendant removed the pack and gauze, cleansed the wound, provided some kind of drainage, repacked the wound and bandaged the arm; that this method of treatment continued until defendant went on a vacation, about the middle of August, when he directed plaintiff to Dr. Clancy for treatment; that Dr. Clancy, upon an examination of plaintiff, informed him that he should not be walking the streets, but should be in a hospital; that plaintiff did go to a hospital, and Dr. Clancy there provided additional drainage for the infected area by making additional openings through the hand, inserting rubber tubing and treating the hand with hot salt solutions; that during the ten days he was treated by Dr. Clancy the spread of the infection was resisted and the swelling greatly reduced.

There is also evidence tending to show that the drainage provided by the defendant was not adequate, and if proper drainage had been afforded the infection would not have spread and the bones in the wrist and hand would not have become involved; that the use of a bichloride of mercury pack was not proper treatment, and that the hand should have been treated with hot salt solutions and hot packs to stimulate the blood supply and thereby assist in counteracting infection; that all loose and dead bone should have been removed as they tended to prevent healing and a recovery; that during the time of defendant's treatment the hand was swollen more than twice its size and the bones thereof were involved as a result of inadequate drainage.

Clearly, this evidence tends to show that defendant negligently failed to arrest the progress of the infection.

In this connection it is contended that certain testimony of plaintiff and Dr. Westerman should be disregarded as contrary to human experience. It is not contended the testimony contravenes any natural law. The weight to be given the evidence was for the jury, and the contention is overruled.

In addition to the facts summarized many inferences favorable to the plaintiff can be drawn from all the evidence.

The court ruled correctly in overruling the demurrer.

Defendant challenges the direction to the jury to allow plaintiff "the reasonable expense for medical attention which plaintiff incurred by reason of his injuries, if any, and directly caused thereby." The contention rests on the absence of any proof of such expense.

There is evidence that plaintiff was in a hospital several weeks and was treated by several physicians. On this evidence an instruction to allow *for medical attention* would have been good as a general instruction on that element of damage. If the jury had been so instructed and the defendant desired the recovery on this element to be limited to nominal damages, it should have tendered an instruction to that effect. [State ex rel. United Rys. v. Reynolds, 257 Mo. 19, 165 S. W. 729.] But the court gave no such instruction. It specifically directed the jury to allow plaintiff the *reasonable expense* for medical attention. This is not a general instruction, and, therefore, was not subject to limitation by an instruction given at the request of the defendant to limit the allowance on this element to nominal damages. If the court, at the request of the defendant, had given an instruction limiting the allowance on this element to nominal damages, it would have been inconsistent with the instruction given at the request of plaintiff to allow him the *reasonable expense* on this element.

The members of a jury may be presumed to know the value of the services of a nurse or common laborer. [Murray v. Railway, 101 Mo. 236, l. c. 240, 13 S. W. 817; State ex rel. United Rys. v. Reynolds, supra.] But it should not be presumed they know the value of the services of six physicians or surgeons who not only treated plaintiff, but operated on him several times.

Plaintiff suggests the evidence shows a loss in wages of $8,000, leaving only $2,000 for suffering and permanent injury. From this it is argued the amount of the verdict is absorbed by elements of damage well proven, and the defendant could not have been prejudiced by the instruction.

If permitted to speculate on the amount allowed by the jury for the different elements of damage, we could not do so in this case, for the plaintiff, on direct examination, testified he had not been able to work since he was injured, and on cross-examination testified he was working as a hod-carrier and earning full pay. On the record we are unable to determine the time lost as a result of the injury.

The instruction is erroneous and prejudicial.

Other questions presented will be eliminated on a re-trial.

For the error noted the judgment is reversed and the cause remanded. All concur.