L. F. CORDRAY v. CITY OF BROOKFIELD, Appellant.—65 S. W. (2d) 938.

Division One, December 6, 1933.

*A. L. Burns, H. K. West* and *Thomas P. Burns* for appellant.

Lon R. Owen for respondent.

FRANK, P. J.—Action to recover damages for alleged personal injuries. Plaintiff below, respondent here, recovered judgment for $10,000, and defendant appealed.

This submission of the case is on rehearing. On the former hearing an opinion written by Commissioner STURGIS was handed down holding that plaintiff made a case for the jury, but reversing and remanding the cause because of error in the instruction on the measure of damages. We agree with and adopt that part of the opinion which holds that plaintiff made a case for the jury. That part of the opinion reads as follows:

"The defendant, a city of the third class, appeals from a judgment against it in a personal injury action alleged to have been caused by a defective sidewalk crossing. There was a brick sidewalk on the north side of Brook Street, an east and west street of that city, and connecting with this at Caldwell Street, running north and south, there was a board walk crossing the west side ditch of that street in order to cross that street to the east side. This ditch was about four feet wide and some two to three feet deep. The board crossing-walk consisted of three parallel two-inch oak boards about a foot wide and ten to twelve feet long. These boards rested on the ground on either side of the ditch about four feet at each end and the middle four feet spanned the ditch without any further support. This board crossing-walk formed a sort of bridge over this ditch.

"It is alleged and plaintiff's evidence showed that this board walk over this ditch had been there a long time, was old and the boards weakened and partially decayed, and the same had sagged down in the middle over the ditch and raised up at the end where it joined the sidewalk, so that the ends of the boards were two or three inches higher than the connecting brick walk. These boards were also somewhat springy so that when a person's weight was on the part over the ditch, that caused the ends of the boards to raise up still more. There was also evidence that these boards had been nailed to cross pieces or stringers, but that the stringers had become rotten, the nails pulled out, and the boards were lying loose on the ground. Plaintiff claimed that in attempting to go east on this board walk over this ditch he caught his foot on or under the end of one of the boards, was tripped up and thrown forward, falling on the edge of the walk and into the ditch, receiving severe injuries to his back

and kidney, resulting in partial paralysis and permanent injury. The answer charged contributory negligence in that 'if plaintiff had used his ordinary senses he would not have fallen,' and not only denied the allegations as to his injury, but directly charged that plaintiff is falsely exaggerating his illness and alleged injuries and is pretending to have sustained much more severe injuries than he actually sustained, and is pretending to be suffering greater pain than he is in fact suffering. The evidence in the case was directed chiefly to plaintiff's contributory negligence in attempting to go over this dangerous crossing walk, with the conditions of which he was perfectly familiar. and in attempting to show that plaintiff was to a large extent malingering and that his ailments were due to causes other than his fall on this crossing.

"The record in this case is somewhat lengthy, containing, in addition to the usual matters, the opening statements of the respective counsel and the arguments made to the jury. These matters have been found interesting and 'show that the case was tried before an able judge and with much vigor and zeal by the respective attorneys. The suit was commenced in Linn County, where Brookfield is located, but on change of venue was tried in Sullivan County. Both parties took occasion during the argument to compliment the splendid character of the jury called in the case, but when that jury returned a verdict for plaintiff for ten thousand dollars damages, we take it that defendant's counsel were no longer bound by what they had previously said in this respect.

"Attending to the assignments of error, it is insisted that plaintiff was conclusively shown to have been guilty of contributory negligence, barring his recovery. This insistence is based on the fact that plaintiff lived on the same street only a short distance from this crossing, had passed over it frequently, observed the condition of the · boards, knew that same were loose, old, and worn, and that the ends next to the sidewalk were raised some two or three inches above the level, etc. Plaintiff's evidence tended to show, however, that in grading and repairing this street a short time before this accident, these crossing boards had been torn up, the ditch cleaned out, and the boards replaced, and that in doing so the boards were replaced in a more loose and uneven condition than before, and the defects and dangers thereby increased. Plaintiff said that he had only been over this crossing a few times after same was torn up and replaced and that he had not given close attention to the changed conditions.

"There is no new question presented here in regard to contributory negligence. Plaintiff was shown to have had that knowledge of the defective condition of this sidewalk which came to a user of the same by frequently passing over it. Whether such a person, when injured and suing for damages, will be held to have assumed the risk of using the walk in its known condition or be held for

contributory negligence in so doing has been frequently adjudicated. The rule is settled that a pedestrian having such knowledge is not generally guilty of contributory negligence as a matter of law in continuing to use the defective sidewalk or street. Whether he is or is not negligent depends on the circumstances of the particular case and is a question for the jury. The test to be applied is whether a reasonably prudent person would under the particular facts continue in such use, or, otherwise expressed, is the danger of doing so, so obvious and glaring that a reasonably prudent person would not do so.

"In Heberling v. City of Warrensburg, 204 Mo. 604, 103 S. W. 36, this court ruled: 'It is not to be understood that it is the duty of the citizen to inspect the sidewalks or streets for defects of which he has no knowledge, but he may act on the presumption the street is reasonably safe so long as he conducts himself as a reasonably prudent person would under like circumstances. If he knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street provided he exercises that care which a reasonably prudent person would in like circumstances, but he is not bound, merely because he encounters a defect which a reasonably prudent man would think he could pass by the exercise of care, to avoid the street entirely.'

"In Wyckoff v. City of Cameron (Mo. App.), 9 S. W. (2d) 872, 875, it is said: 'From what was said in the case of Heberling v. Warrensburg, supra, the mere fact that the place was not a reasonably safe place for one to pass over in the exercise of ordinary care, and plaintiff knew of the defect, does not convict her of contributory negligence as a matter of law unless the defect was so obviously dangerous that no prudent person would attempt to use the sidewalk. The case of Border v. Sedalia, 161 Mo. App. 633, 636, 144 S. W. 161, cited by defendant, recognized the rule laid down in the Heberling case.'

"In Maus v. City of Springfield, 101 Mo. 613, 618, 14 S. W. 630, where the facts were somewhat similar to those here, this court said: 'Plaintiff admits he was aware of the gap or opening in the crossing but the alleged defect in it was not of such nature as to render its use necessarily dangerous to a person ordinarily careful. His knowledge of it was entitled to consideration as bearing on the issue of his negligence, but it was not decisive of that issue nor did it of itself preclude a recovery.' [See, also, Cohn v. City of Kansas, 108 Mo. 387, 392, 18 S. W. 973; Scanlan v. Kansas City (Mo. App.), 19 S. W. (2d) 522, 524, and Kiefer v. City of St. Joseph (Mo.), 229 S. W. 1089.]

"The court here overruled a demurrer to the evidence and gave this instruction for plaintiff: 'The court instructs the jury that notwithstanding they may find and believe from the evidence that plaintiff had knowledge of the defective condition, if any, of the crossing walk at the time and place detailed in the evidence where

he fell thereon, if you so find, yet under the law this would not make him guilty of contributory negligence in this case or entitle defendant to a verdict on that ground, provided you further find from the evidence that the defect, if any, in said crossing walk at said time and place was not so glaringly dangerous and obvious that an ordinary prudent person would not have gone thereon and that plaintiff, in going and undertaking to walk thereon at the time of his fall and injury, if any, exercised such care and caution as would have been exercised by a person of ordinary prudence under the same or like circumstances.'

"The court also gave this instruction for defendant: 'The court instructs the jury that it is the duty of pedestrians walking on the sidewalks of the city of Brookfield to use ordinary care and discern defects in a sidewalk over which they are walking. They are not required to keep their eyes constantly on the sidewalk, neither are they permitted to go along the sidewalk regardless of where they are walking. Therefore, the court instructs you that although you may find from the evidence that the sidewalk or crossing onto which plaintiff stepped and fell, if he did fall, was a dangerous and defective crossing, still if you believe from the evidence that plaintiff knew of said place and the danger of using same, or by the exercise of ordinary care on his part could have known of it, and that plaintiff attempted to pass over said point without using reasonable care and such failure contributed to cause his injury, if he suffered injury, then the plaintiff is guilty of contributory negligence in not discerning it and your verdict should be for the defendant.'

"The court also gave this instruction for defendant: 'The court instructs the jury that where a person knows of a confronting danger, and fails to use reasonable care to avoid being injured thereby, the law calls his conduct careless, because it is out of harmony with ordinary prudence and loads it with the entire responsibility for the consequences, notwithstanding the negligence of another may have aided in producing them. Therefore, if you find and believe from the evidence that plaintiff knew of the defective condition of the crossing and failed to use reasonable care to avoid failing on it, your verdict should be for the defendant.'

"These instructions, the last two of which were given at defendant's instance, submitted this point fairly enough for defendant and we rule this point for the plaintiff.

"Defendant complains of the refusal of the court to give its instruction as follows: 'The city of Brookfield was not an insurer of plaintiff while traveling on its sidewalks, and the plaintiff was required to use ordinary care to discover or avoid defects in the sidewalk in controversy, if you find said sidewalk was defective in any way.' The court, however, gave this instruction for defendant: 'The court instructs the jury that the city of Brookfield is not an insurer of the safety of pedestrian traveling along or over its sidewalks, and

is required to exercise ordinary care only to keep its sidewalks in a reasonably safe condition.' This instruction, we think, was sufficient to cover the point that the city was not an insurer of the safe condition of its sidewalks and, when taken in connection with the other instructions, covered all the grounds of this refused instruction.

■ "Complaint is also made of improper argument made by plaintiff's attorney in his closing speech to the jury. In the course of his closing argument, plaintiff's attorney said in a disconnected sort of way: 'The truth is, there is six thousand dollars being spent here in this defense—' Just what the attorney meant to say further can only be guessed at as an objection was made with a request that the jury be instructed to disregard it. The court sustained the objection and told the jury to disregard the argument 'as to what is paid to counsel.' The city was represented by three attorneys and there was no evidence as to what they were being paid. The court very properly sustained the objection and that ended the matter. We will not rule that the court should have gone to the extent of discharging the jury as was requested. Moreover, as the case must be remanded for new trial on another ground, this is not a matter of much importance and not likely to occur again."

Contention is made that the court erred in giving plaintiff's Instruction No. 5.

■ This is the measure of damage instruction. That part of the instruction pertinent to the contention made, reads as follows:

"The court instructs the jury that if you find for plaintiff under all the instructions and evidence herein, then you will assess his damages at such sum as you may believe from the evidence will fairly and reasonably compensate him . . . for any doctor bills and medicine, if any, he has expended or become obligated for because of said injuries, if any, . . . ."

The petition alleges that by reason of said injuries plaintiff necessarily laid out, expended and became obligated to pay large sums of money for medicines, medical attention and doctor bills. The contention made is that there was no evidence of the value of the medicines and doctor bills which plaintiff incurred.

The evidence regarding the doctor bills was that given by Dr. McLarney, the attending physician, and the plaintiff himself.

DR. McLARNEY testified: "I haven't any idea what Mr. Cordray owes me. He hasn't paid me anything. Couldn't state approximately because the girl at the office takes care of the books. I averaged seeing him every five, eight or ten days, sometimes a little oftener. I think the longest time was two weeks after he was home. At times two or three times a day."

The plaintiff testified as follows:

"Q. Have you become indebted for medical attention? A. I'll say I have.

"Q. Do you now owe and are you indebted to Dr. McLarney for the calls he has made on you? A. Yes, sir, every one of them.

"Q. They do charge you for calls don't they? A. Yes, sir.

"Q. Approximately how often since the 29th day of May (the date of plaintiff's injury) had Dr. McLarney called at your residence and attended you as a physician? A. I couldn't hardly approximate it.

"Q. How regularly, how many times a week? A. It would average two or three times a week since I have been hurt, take it on an average.

"Q. What do you say it will average a week, the whole time? A. It would average six or seven dollars, along there; two dollars a call."

There was no objection made as to the qualifications of plaintiff to testify on this subject. Neither was he cross-examined thereon. We recognize that if proper objection had been made, plaintiff, in order to prove this element of damage, would have been required to show that he knew the reasonable and customary charge made by doctors in that community, and that two dollars per call was a reasonable and customary charge. Whether or not plaintiff knew that "two dollars a call" was a reasonable and customary charge went to his qualifications to speak on the subject. Defendant waived his qualifications by failure to object to the question, and we must take his answer at face value. We think his answer to the question warrants the inference that he means that "two dollars a call" was what the doctor was charging him or that it was the customary charge made by doctors for making calls in that community. This, together with the further testimony that the doctor called to see him on an average of two or three times a week since the date of his injury on May 29, 1929, furnished a substantial basis from which the jury could arrive at the amount of the doctor bill, and warranted the submission of that issue to the jury.

The next contention is that there was no evidence of the amount plaintiff expended or obligated himself to pay for medicine, and for that reason the measure of damage instruction which submitted that item to the jury as an element of damage was erroneous.

The only evidence on this question was that given by Dr. McLarney, the attending physician. He testified as follows:

"He has been taking medicine, has been to expense for medicine. I have no idea as to the cost of it. He probably will have to spend money for medicine and medical attention in the future. He should. I do not know for how long, but it is possible that it will be that way for the remainder of his life."

There is no evidence in the record tending to show the amount of money plaintiff expended or obligated himself to pay for medicine. The evidence that he had been to expense for medicine would have authorized a general instruction directing the jury to consider that fact in arriving at the amount of the verdict, because the fact that

he had been to expense for medicine entitled him to nominal damages even though the amount of such expense was not shown. Had such a general instruction been given, it would then have been up to defendant to request an instruction limiting the recovery for medicine to nominal damages, if it desired such limitation. [McDonough v. Freund, 323 Mo. 346, 354, 19 S. W. (2d) 285.] However, the instruction under consideration was not a general instruction. It specifically directed the jury to award plaintiff damages at such sum as the jury believed from the evidence would *reasonably compensate* him for the amount he had expended or obligated himself for, when there was no evidence tending to show what that amount was. A like question was before Division One of this court in McDonough v. Freund, supra. We there said:

"Defendant challenges the direction to the jury to allow plaintiff 'the reasonable expense for medical attention which plaintiff incurred by reason of his injuries, if any, and directly caused thereby.' The contention rests on the absence of any proof of such expense.

"There is evidence that plaintiff was in a hospital several weeks and was treated by several physicians. On this evidence an instruction to allow *for medical attention* would have been good as a general instruction on that element of damage. If the jury had been so instructed and the defendant desired the recovery on this element to be limited to nominal damages, it should have tendered an instruction to that effect. [State ex rel. United Rys. v. Reynolds, 257 Mo. 19, 165 S. W. 729.] But, the court gave no such instruction. It specifically directed the jury to allow plaintiff the *reasonable expense* for medical attention. This is not a general instruction, and, therefore, was not subject to limitation by an instruction given at the request of the defendant to limit the allowance on this element to nominal damages. If the court, at the request of the defendant, had given an instruction limiting the allowance on this element to nominal damages, it would have been inconsistent with the instruction given at the request of plaintiff to allow him the *reasonable expense* on this element."

For the reason stated, we hold the instruction was erroneous.

We dislike to reverse this case because of the improper submission of the expense incurred for medicine as an element of damage, but we cannot do otherwise without disregarding established rules of law. Our opinions do more than decide the particular case. They are pointed to as precedents. If we should affirm this judgment for the full amount, or order a *remittitur* in an amount which we believe would be sufficient to cover expense incurred for medicine, with no way of determining what that amount should be, our opinion would, in future, rise to plague us in every case in which there was an unproved element of damage submitted to the jury.

In the past this court has affirmed judgments in cases in which an

unproved item was submitted to the jury as an element of damage, but in every such case there was something from which the court could determine that the erroneous submission did not materially affect the merits of the case and for that reason, it was held that such submission did not constitute reversible error. For example, King v. City of St. Louis, 250 Mo. 501, 157 S. W. 498. In that case the jury was directed to compensate the plaintiff for "lost earnings of labor." Contention was made that there was no evidence to support that charge. In affirming the judgment in that case, we said:

"It is not necessary in this case for us to hold one way or the other on whether she could recover more than nominal damages. This is so because the modest size of her verdict, considering her confessed grievous hurts and permanent injuries, together with her undisputed pain of body and mind, shows that the jury could not have allowed her anything of substance on the score of 'lost earnings of her labor.' We feel sure of this, because, deducting her conceded doctor's bill and the item for medicine, totaling $115, there is left only a judgment of $1042.09 as just compensation for the broken leg, a dislocated ankle, a permanent disability and the consequent suffering of the widow.

"(c) Moreover, if it be taken for granted, arguendo, that she was entitled to no more than nominal damages for loss of the earnings of her labor under the state of the proof, and that the jury should have been told so, yet, taking her small verdict, we cannot hold the error, if any, affected the merits and constituted reversible error. [Shinn v. Railroad, 248 Mo. 173.] We must 'believe' the merits were affected to the injury of appellant before we can reverse a judgment. [R. S. 1909, sec. 2082.] We have no such belief, but contra."

In the instant case the verdict was in the substantial sum of $10,000. We would not be justified in saying in this case that the size of the verdict and character of plaintiff's injuries indicate that the jury did not allow anything of substance for the item of "expense incurred for medicine."

For error noted in the instruction, the judgment is reversed and cause remanded. All concur.