248 S.W.2d 25 (1952)
SCHRAEDEL
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28348.
St. Louis Court of Appeals. Missouri.
April 15, 1952.
Motion for Rehearing or for Transfer to Denied May 19, 1952.
*26 Mattingly, Boas & Richards, and Lloyd E. Boas, all of St. Louis, for appellant.
Hullverson & Richardson, St. Louis, and Louis Hicks, Clayton, for respondent.
Motion for Rehearing or for Transfer to Supreme Court Denied May 19, 1952.
*27 ANDERSON, Judge.
This suit, as originally instituted, was an action by Katherine Schraedel, as plaintiff, against the defendant, St. Louis Public Service Company, to recover damages for personal injuries alleged to have been sustained by said plaintiff on December 29, 1949, while a passenger on a bus owned and operated by the defendant. Subsequent to the filing of said suit Katherine Schraedel died and the cause was thereafter revived in the name of Marguerite Schraedel, Administratrix of the Estate of Katherine Schraedel. The trial below resulted in a verdict and judgment for plaintiff in the sum of $5,500. From this judgment, defendant has appealed.
The case was pleaded and submitted on the theory of res ipsa loquitur, the amended petition alleging that on December 29, 1949, Katherine Schraedel was a passenger in one of defendant's busses, at which time said bus collided with an automobile as a result of the defendant's negligence. The petition further alleged that "the negligence of the defendant either contributed to cause or did not contribute to cause the death of Katherine Schraedel. Hypothetically, plaintiff states that if the defendant's negligence directly contributed to cause the death of Katherine Schraedel, then the defendant is liable to the plaintiff as the administratrix of the estate of Katherine Schraedel for damages on account of the wrongful death of Katherine Schraedel. On the other hand, and hypothetically, plaintiff states that if the defendant's negligence did not directly contribute to cause the death of Katherine Schraedel, then the defendant is liable to this plaintiff for such damages as were sustained by Katherine Schraedel during her lifetime."
In Instruction No. 1 plaintiff submitted the case to the jury on the theory that the injuries sustained by Katherine did not directly and proximately cause or contribute to cause her death. The defendant joined issue on the same theory and, by its instructions, advised the jury that if the injury sustained by plaintiff's intestate at the time in question caused or contributed to cause the death of Katherine Schraedel, plaintiff could not recover.
In its points relied on appellant alleged that the court erred (1) in overruling the defendant's motion for a directed verdict; (2) in refusing defendant's motion for mistrial made by defendant during the voir dire examination of the jury when plaintiff's counsel referred to the Transit Casualty Company, defendant's insurance carrier, as "a national outfit with its home offices located here in St. Louis in the Buder Building"; (3) in denying defendant's motion for a mistrial based upon prejudicial and inflammatory remarks of plaintiff's counsel in his closing argument to the jury; and (4) in giving and reading to the jury Instruction No. 2. Lastly, it is urged that the verdict is excessive.
In support of the first assignment above mentioned appellant urges that plaintiff failed to sustain her burden of proving that the injuries sustained by Katherine Schraedel did not cause or contribute to the latter's death. This necessitates a review of the evidence adduced on said issue.
On December 29, 1949, Katherine Schraedel was a passenger on one of defendant's busses. She was seated in the third seat on the right side of the bus. The bus at the time was proceeding south on Eighth Street, and when it reached the intersection of Eighth and O'Fallon Streets it collided with an automobile which had been proceeding west on O'Fallon Street. As a result of the collision Mrs. Schraedel was thrown to the floor of the bus, her ankle striking one of the rods that run from the floor to the ceiling of the bus. She was assisted to her seat by another passenger and shortly thereafter left the bus, walked one block to Ninth Street, and took another bus which took her to the vicinity of her home. She alighted from this second bus at Taylor and St. Louis Avenues, and from there walked one-half block to the Faith Hospital where she received treatment for her injuries. Her injuries consisted of a fracture of the distal end of the fibula of her left leg, accompanied by extensive soft tissue injury and swelling of her foot and ankle. At the hospital she was examined and treated by Dr. Signorelli. Her leg was placed in a cast, and she was sent home the same day. Her leg remained in a cast for *28 about eight weeks, and after the removal of the cast her foot was kept in a bandage for about a month.
For two months after the cast was removed Mrs. Schraedel required the use of crutches, and thereafter, at times, she used a cane. During the time the leg was in a cast Dr. Signorelli called at Mrs. Schraedel's home every week or two to see how she was getting along. After the cast was removed Mrs. Schraedel made trips to the hospital where she received heat treatments to her ankle. At first she made two trips a week to the hospital for this purpose, but later only once a month, until she became critically ill on December 15, 1950. Plaintiff testified that during this time she bathed her mother's feet in hot water and massaged her feet and legs three times a day.
Dr. Signorelli testified:
"On December 15th the picture changed considerable. She came in, assisted by her daughter. She was very, very short of breath, panting, just about exhausted, and we took her in and examined her and found this severe swelling of both legs, very edematous. By edematous I mean swelling; * * * and her heart was very, very irregular. We call it an arrhythmia, which means an irregular pulsation and fibrillation at the same time, so there was no doubt about it in our minds that this lady had a cardiac condition or a heart condition which had developed from the last time that she had been there. We immediately prescribed medication."
Mrs. Schraedel died on January 6, 1951. The cause of death was cardiovascular disease, a disease of the heart and blood vessels primarily. Dr. Signorelli testified further:
"Q. Now, Doctor, did the injury to her leg cause her death? A. No, I wouldn't say that. It could contribute to it. I don't see how this injury could have killed this woman.

* * * * * *
"Q. Doctor, have you at any time prior to December 15, 1950, ever examined this woman's heart? A. Yes. * * * I examined her the first time I saw her in the out-patient department in the hospital.
"Q. Did you make that notation on your records? A. No.
"Q. Covering any examination other than the right ankle? A. Everything else was negative at that time. I just put down my positive findings.

* * * * * *
"Q. Would a heart condition cause her right leg to swell? A. A heart condition would cause both legs to swell, probably."
Dr. Signorelli further testified that Mrs. Schraedel showed symptoms of senility, but no more than any other person seventy-five years of age, which condition grew progressively worse as time went on. He further stated that sclerosis, or hardening of the arteries and blood vessels, which comes with age, would interfere with circulation and could cause swelling in the extremities, though not necessarily. He stated:
"You wouldn't have any swelling until you have a definite breakdown of that cardiovascular disease, brought on by some causative factor or etiology, maybe due to infection, let's say an infection of the heart muscles or lung, pneumonia, or an overadded strain can be due not only to a bacterial or infectious thing, but could be due to a a chemical thing, a poisoning, or it could be due to violence. Those are causative factors that could cause the same thing.
"Q. In this case, what was it that caused it in your opinion as her attending physician? A. In this case I do not know. I don't believe there is anyone who can tell you just exactly what causes heart trouble * * * except it just happened as progressive sclerotic or aged disease process. Sometimes the causative factor is very easy to find.

* * * * * *
"Q. I believe you said, Doctor, that you couldn't say and you didn't think *29 anybody else could say what caused this woman to have this heart attack? A. The exact cause, no. * * * The cause of her death in this case was cardiovascular disease. * * * I think her leg could have contributed to this particular cause of death.
"Q. * * * So far as you know and so far as you are able to say, it's just as logical to assume that the leg injury contributed to cause her death as to assume that it did not? A. Yes, sir. * * * In my opinion the injury to the leg was not the direct cause of death. * * * It was definitely contributing."
Katherine Schraedel was seventy-five years of age at the time she was injured. She had led a very active life. She lived with plaintiff, her daughter, and did all the housework, housecleaning, shopping, cooking, washing and ironing. She also worked in the garden and mowed the lawn. The accident completely disabled her, so much so as to require constant attendance and assistance. Her daughter quit her job to take over her mother's duties and to wait upon her mother from the date of the injury until she died. The doctor testified that his bill for services was $300. His records showed twenty-two visits by Mrs. Schraedel to the doctor's office. At the time the cast was taken off Mrs. Schraedel's leg the fracture had begun to heal, and the healing process continued down to December 15, 1950, the day she suffered the heart attack.
Appellant contends that plaintiff failed to sustain her burden of proving that the injuries received by Mrs. Schraedel did not cause or contribute to the latter's death. In support of this contention it is urged that Dr. Signorelli's testimony was inconsistent and contradictory and, for that reason, did not constitute substantial evidence, with the result that a verdict for plaintiff could be reached only by resort to speculation and conjecture.
It is, of course, fundamental that all the evidence must be viewed in the light most favorable to the plaintiff, and plaintiff must be given the benefit of all inferences favorable to her theory of the case.
It is our duty to consider all the evidence. We cannot base our conclusions upon consideration of a part of the testimony of one witness. It must also be borne in mind that plaintiff need go no further in her proof than to bring forward sufficient evidence from which the jury could reasonably find that the injury in question was not a direct and proximate cause of Mrs. Schraedel's death. Adelsberger v. Sheehy, 336 Mo. 497, 79 S.W.2d 109.
Respondent lays great emphasis upon the testimony of Dr. Signorelli, given on cross-examination, wherein he stated that violence could be a causative factor in producing the breakdown in the cardiovascular disease from which Mrs. Schraedel suffered, and that in his opinion the leg injury could have contributed to the condition which caused Mrs. Schraedel's death. The doctor also admitted on cross-examination that it would be just as logical to assume that the leg injury contributed to cause death, as to assume that it did not, and then stated that it did so contribute. However, the doctor further stated that the injury to the leg was not a direct cause of death; that though the injury could contribute to the death, he could not "see how this injury could have killed this woman."
Appellant contends, first, that the testimony of the doctor is so conflicting that it does not amount to substantial evidence; and, second, that if it proves anything it proves that the injury was a contributing factor in the death of Mrs. Schraedel.
In our opinion, the foregoing contention is without merit. In our view, the purport of the doctor's testimony, taken as a whole, was that Mrs. Schraedel died of cardiovascular disease and that the injury to the leg was not a direct but a remote contributing factor, in the sense that it rendered her body more amenable to the ravage of the disease which thereafter developed. When thus viewed, there is no inconsistency in the doctor's testimony. And, when we consider the foregoing testimony in connection with the other facts and circumstances shown by the evidence, it is our judgment that the jury could reasonably have found that the injury which Mrs. Schraedel received was *30 not a direct and proximate cause of her death. Relevant facts developed by the evidence which tend to support such a conclusion are: that on the date Mrs. Schraedel was first examined she showed no evidence of any heart condition; that the fracture was a simple one, there being no overlapping of the bones or laceration of the tissues at the site of the injury; that after the leg was put in a cast the healing process progressed to such an extent that the cast was removed at the end of eight weeks; that the healing process continued in a normal manner for several months thereafter; that Mrs. Schraedel showed symptoms of senility at the time the doctor first examined her, and that this condition progressed as time went on; that the heart condition developed suddenly, almost a year after the accident, and that such condition could occur as a result of a progressive sclerotic condition.
From the foregoing evidence, we believe a jury could reasonably find that the proximate cause of Mrs. Schraedel's death was a cardiovascular disease brought about by progressive senile changes affecting her circulatory system, and not the result of the injury to her leg. The trial court properly overruled defendant's motion for a directed verdict.
During the voir dire examination of the jury plaintiff's counsel asked the following question:
"Q. Now, have any of you worked for, in the past, or do you know anyone who now works for or do you have any relatives who work for, or do you have any financial interest in, or do you have a policy of coverage with the Transit Casualty Company, which is a national outfit * * *?"
Defendant's counsel thereupon moved to discharge the jury, stating: "I have no objection to the general question. The part I object to is the comment that it's a national outfit with main offices in St. Louis." The Court overruled the motion.
Appellant contends that the reference to the Transit Casualty Company as "a national outfit" was highly inflammatory and made in bad faith for the purpose of prejudicing the jury, and for that reason the court should have sustained the motion for a mistrial.
We are not convinced that the statement complained of was of such a prejudicial character as to warrant the discharge of the jury. The trial judge did not so consider it, for he overruled the motion after careful consideration. The matter was again specifically brought to his attention in defendant's motion for new trial, and it must be assumed that before the trial judge ruled on the motion he considered the effect of the incident on the minds of the jurors and on the outcome of the trial. It was a matter resting within the trial court's discretion. We do not believe he abused that discretion by refusing to sustain the motion for a mistrial.
The third assignment of error is predicated on certain remarks made by plaintiff's counsel in his argument to the jury. The first complaint appears during counsels' opening argument and, in order to show exactly what occurred, we reproduce from the transcript the following:
"Mr. Jones: She brings this suit, as you have heard time and again, not in her own right, but as administratrix of her mother's estate. And you have heard testimony one way and the other about her care and assistance given her mother. That is not a fund which she is seeking from this court room to take for herself, but that is to show an obligation which the estate, through Mrs. Katherine Schraedel, had for that sort of care. Is the Public Service Company to benefit because the daughter thought enough of her mother to give up a full time permanent job so that she with her own loving care, rather than a stranger, would perform the necessary care and assistance her mother required? Obviously not, and it should make no difference here that it was the daughter who performed those services rather than a stranger called in from the outside. Miss Schraedel would have loved, of course, to be able to say, `Mother, I will give up my job, I don't need the money and I'll take care of you and it's a donation on my *31 part,' but when you have to work for a living, you can't do that.
"Mr. Boas: * * * Your Honor, I object to that as highly prejudicial and inflammatory argument, appealing to the jury's sympathy because of the condition of the parties, and I ask the Court to instruct the jury to disregard it. There is no evidence to support that either.
"The Court: That objection, Mr. Jones, will have to be sustained * * *. Ladies and gentlemen of the jury, you will not consider that argument in arriving at your verdict."
In plaintiff's petition it is alleged that, as a direct result of her injuries, Katherine Schraedel became obligated for the reasonable value of nursing care. In support of this allegation Marguerite Schraedel testified that she quit her job at the Cooper Furniture Company the day her mother was injured, and devoted her whole time thereafter, day and night, to caring for her mother. These services included, in addition to housework, the bathing of her mother's feet in hot water three times a day, massaging her mother's legs, and assisting her mother whenever she went to the doctor's office. Marguerite testified that she did not intend to donate her services as nurse. The mother testified, in a deposition taken prior to her death, that she and her daughter decided that it would be better to have the daughter take care of her than to employ a stranger.
The Court, in its instruction on the measure of damages, charged that if the jury found that Marguerite, the daughter, rendered necessary aid and assistance to her mother, and that such aid and assistance were not gratuitously donated or performed, they should take into consideration in assessing plaintiff's damages the reasonable value of such aid and assistance. It further appears from the transcript that defendant's counsel, during his cross-examination of Marguerite, attempted to show that plaintiff performed the services because she felt obligated to do so as a daughter, and not for pay.
This line of questioning could reasonably be regarded by plaintiff's counsel as a subtle attempt to prejudice the jury against Marguerite, because she was expecting pay for services which she, as a loving and dutiful daughter, should have rendered gratuitously. It was against this background that the argument of plaintiff's counsel was made. The argument was, in a measure, provoked by questions put to Marguerite by defendant's counsel which carried embarrassing implications, and it is understandable that plaintiff's counsel would seek to neutralize their effect in the manner in which he did. But whether plaintiff's counsel went too far and overstepped the bounds of propriety in meeting the issue, we need not determine. The Court sustained defendant's objection to the argument. It did everything the defendant asked. Certainly, there was no error committed by the Court in connection with this incident which would warrant a reversal of the judgment.
Appellant next complains of improper comment by plaintiff's counsel during his closing argument. The incident, as it appears in the transcript, is as follows:
"Mr. Jones: * * * Again it seems to us that the Public Service Company is attempting to benefit because the daughter, while not able to donate her time, did take care of her mother

* * * * * *
"Mr. Boas: At this time, I move the Court declare a mistrial for the plaintiff's argument, plaintiff was not able to donate her time, as being a reference to the financial condition of the plaintiff and improper, prejudicial and misleading.
"The Court: Deny the request.
"Mr. Boas: Then I move the Court to instruct the jury to disregard the statement that plaintiff was
"Mr. Jones: Your Honor, I will withdraw it. I don't want to get
"The Court: Go ahead, withdraw it then.
"Mr. Jones: Ladies and gentlemen, Mr. Boas has raised this objection and he is entirely right. * * * I withdraw the comment that the daughter *32 was unable to take care ofto donate her care and attention to the mother.
"Mr. Boas: Well, now, I renew my motion on the ground that merely emphasizes it and if the Court rules adversely on that, I will request the Court himself to instruct the jury to disregard it.
"The Court: I will deny the request both ways."
Here again it appears from the transcript that the argument might have been provoked by remarks of defendant's counsel. During his argument, defendant's counsel stated:
"When did she decide that she didn't want to help her mother? * * * What kind of a person is it, has a mother and didn't intend to do anything for her, for nothing? What did her mother say when her deposition was taken ? Here is her mother's testimony: `When she came home and seen I was hurt, why, she says, "Well, I am going to take care of you, Mom."' Later on, when it got to be a legal case, a change of heart."
Here again, counsel, by asking the question, "What kind of a person is it, has a mother and didn't intend to do anything for her * * *?" sought to imply that Marguerite was an unnatural person devoid of normal filial affection. To this argument, plaintiff's counsel was entitled to make a reasonable reply. His answer was that Marguerite was not able to donate her services. This was a good answer and a legitimate argument unless wholly unsupported by the record. The evidence does not show that Marguerite was a person of means. It does show, however, that she was a single person and that she earned her own living by working at a furniture establishment for $40 per week. In our judgment, these facts furnish a proper foundation for the argument of plaintiff's counsel. The primary purpose of plaintiff's counsel was not to make reference to his client's financial condition to create sympathy for her, but to rebut the inference sought to be created by defendant's counsel. It seems to us that the argument was legitimate, and that the trial court's rulings were not an abuse of discretion.
Plaintiff's counsel read in evidence a deposition of Katherine Schraedel. In this deposition Mrs. Schraedel testified that she was on her way to the City Hall to pay her taxes when the accident occurred. In his closing argument, plaintiff's counsel said:
"Ladies and gentlemen, at the time this accident happened, Mrs. Schraedel, as the testimony showed through her deposition, was on the way to the City Hall to pay her taxes. She was paying, or on her way to pay, what she owed to others on time and in full."
An objection was interposed to the foregoing argument on the ground that there was no evidence to support it. The objection was overruled, and plaintiff's counsel continued:
"Ladies and gentlemen, it has been approximately a year and a half since these injuries were sustained. The Public Service Company cannot be made to pay its debt to this woman on time, but it can be made, at your hands * * * to pay it in full.
"Mr. Boas: I want to object to that as being highly improper and prejudicial and ask the Court to instruct the jury.
"The Court: That objection is sustained. Ladies and gentlemen of the jury, there isn't any such thing in the trial of a case of this kind as payment for damages on time."
Appellant urges that the court erred in refusing to sustain the first objection, on the ground that there was no evidence that Mrs. Schraedel was on her way to pay her taxes on time and in full.
The evidence did show that at the time Mrs. Schraedel was injured she was on her way to the City Hall to pay her taxes. It also appears that the accident happened on December 29, 1949, two days before 1949 taxes would have become delinquent. From this evidence it might perhaps be inferred that she was intending to pay her taxes on time and, since it is not customary for one to pay taxes in installments, it could reasonably be said that she *33 was going to pay them in full. But be that as it may, the incident, in our opinion, was trivial. It is hard to believe that a jury would be influenced into giving a plaintiff a verdict to which she was not entitled simply because such person paid her taxes on time and in full. We are precluded from reversing a judgment unless we believe that error was committed against the appellant materially affecting the merits of the action. Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449; Roush v. Alkire Truck Lines, Inc., Mo.Sup., 245 S.W.2d 8; Section 512.160 RSMo 1949, V.A.M.S.
Appellant next assails that portion of Instruction 2 on the measure of damages which authorizes the jury to take into consideration, in assessing plaintiff's damage, the reasonable value of the aid and assistance rendered Katherine Schraedel by her daughter, Marguerite. The basis of appellant's complaint against said instruction is that there was no evidence adduced as to the reasonable value of said service. Appellant has cited in support of its contention the case of Murphy v. S. S. Kresge Co., Mo.App., 205 S.W.2d 252. In that case this court held that recovery could not be had for the amount of doctors' bills paid because there was no evidence of the reasonable value of the professional services rendered. In the case at bar, Marguerite, the daughter, did not perform any professional nursing service for her mother, or service calling for special skill and efficiency. She waited upon her mother by assisting her when she moved about; she bathed and massaged her mother's legs; and took over the housekeeping and cooking duties which had theretofore been performed by her mother. The members of the jury may be presumed to know the reasonable value of such services. McDonough v. Freund, 323 Mo. 346, 19 S.W.2d 285; Tuttle v. Brayton, Mo.App., 215 S.W.2d 46; In re Hartle's Estate, Mo.App., 236 S.W.2d 40.
Lastly, it is urged that the verdict of the jury is excessive. The determination of the amount of damages is, of course, primarily for the jury, and we cannot disturb its finding unless the amount is so unreasonable as to shock the judicial conscience. The verdict returned in this case has been approved by the trial judge. Considering the evidence in the light most favorable to plaintiff, we cannot say the verdict was manifestly excessive.
The judgment is affirmed.
BENNICK, P. J., and RUDDY, J., concur.