Doris K. GUILEY, Respondent,

v.

Albert S. LOWE and Mrs. Kenneth
Brizendine, Appellants.

No. 45670.

Supreme Court of Missouri,

Division No. 2.

June 9, 1958.

Rufus Burrus, Independence, for appellants.

George M. Hare, Independence, F. L. Thompson, Sam Mandell, Kansas City, for respondent. Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

EAGER, Judge.

The plaintiff-respondent sued the defendants-appellants for personal injuries incurred in an intersectional automobile collision on May 24, 1950. We shall refer to the parties as they appeared below: Plaintiff alleged negligence in failing to keep a lookout ahead and laterally, excessive speed, and negligence in driving into the intersection against a red traffic control light. The speed allegation was not pressed at the trial. The defendant Mrs. Brizendine was driving defendant Lowe's car at his request and on a mission for him. The collision occurred in the northern part of Independence at the intersection of U. S. Highway No. 24 and Liberty Street. Both defendants counterclaimed for personal injuries and Lowe also for property damage. The jury awarded plaintiff $8,200 against both defendants and found against both defendants on their counterclaims. Judgment was entered accordingly, motion for new trial was overruled, and this appeal followed in due course.

Plaintiff had for some years been working as a restaurant cook; she was 34 years of age at the time of the accident. The car she was driving was a 1939 Plymouth and defendants' car was a 1938 2-door Ford. Plaintiff was proceeding east, alone, on Highway 24 (which we shall refer to as No. 24), and the defendants, with two passengers, were traveling north on Liberty Street. Since there is no contention that plaintiff failed to make a submissible case, we will not be required to state the evidence in great detail. Plaintiff testified: that she was familiar with this intersection and on this occasion was driving in the southern, or outside, lane of the 4-lane No. 24; when she was just west of Osage Street, the next cross street west of Liberty, she saw that her traffic light at the Liberty intersection was red; she was then traveling at approximately 25 miles an hour; just after she passed Osage the light at Liberty Street for eastbound traffic turned green, and remained green until

after the collision; there was a terrace and a retaining wall on the southwest corner of the Liberty Street intersection, which obscured somewhat the vision to the south as one approached it on No. 24; at some time before entering the intersection plaintiff slackened her speed to 15–20 miles an hour. She further testified: that she saw defendants' car when it was 25–50 feet south of the south line of No. 24, and when she, plaintiff, was still west of the intersection; that defendants' car then seemed to be slowing down so she proceeded, looking to her left to see if anything was approaching from that direction; that when she looked back defendants' car was "right there at me;" and that it had not stopped; that she, plaintiff, applied her brakes and swerved to the left, but the impact came almost immediately. The front of plaintiff's car, actually more to the right front, struck the left side of defendants' car at approximately its mid-section; plaintiff testified that the impact occurred in the "passing lane" or inside lane for eastbound traffic on No. 24. Plaintiff further testified that when she asked defendant Brizendine why she hadn't stopped for the light, the latter said, as plaintiff recalled, that she "didn't see a light." Plaintiff was corroborated substantially by a witness who was driving slightly behind her and to her left and who was able to stop soon enough to escape being involved.

Defendant Brizendine, corroborated to some extent by her passengers, testified: that when she was some distance south of No. 24 on Liberty Street she saw that the traffic light was red, and that she gradually slowed down to give it a chance to change; that she had nearly come to a stop before actually reaching the intersection; that she had looked to her left when she was about 50 feet to the south and had seen no car; that the light changed when the front of her car was about two feet from the south line of No. 24, and she shifted gears to proceed, intending to turn right on No. 24; that just at that time plaintiff's car struck hers, as she "had just entered the high-

way"; that the impact pushed at least part of her car against the east curb of Liberty Street; that she did not see plaintiff's car because her eyes were "centered on the light," and that she did not look back to her left "the second time"; that she only looked to the left once because she "had the light"; that at ten feet from the intersection there was nothing to prevent her from seeing traffic approaching from her left, and that she was then moving at 4–5 miles an hour and could have stopped within five feet or less. It was defendants' theory that plaintiff struck their car before it got fully out into the intersection. There was much controversy concerning the position of the cars after the collision, which we need not discuss. Nor need we, at this point, relate plaintiff's injuries; so much of that as may be necessary will be discussed in connection with plaintiff's damage instruction.

The first point made by the defendants is that plaintiff's principal verdict-directing instruction was reversibly erroneous in failing to negative plaintiff's contributory negligence, and in that it was broader than the negligence pleaded in the petition. The instruction does not require a finding that plaintiff was not negligent. Defendants cite cases, generally, to the effect that it is error to omit all reference to an essential fact or element in a verdict-directing instruction. We need not discuss those cases. Plaintiff, on the other hand, insists that there was no sufficient plea of contributory negligence and that plaintiff was under no duty to include that issue in her instruction when the defense was not pleaded, citing: Brady v. St. Louis Public Service Co., Mo., 233 S.W.2d 841, 844; Cox v. Consolidated Cabs, Inc., Mo.App., 290 S.W. 2d 658, 661. On the day of trial defendants amended their joint and separate answers so as to allege the following: "That if any injury or damage had been or was sustained or suffered by the plaintiff herein, the same was sustained or suffered as a direct result of her own carelessness and negligence." Plaintiff relies upon

White v. Powell, 346 Mo. 1195, 145 S.W. 2d 375, and the cases therein cited, as holding that such is not a plea of contributory negligence; and we note also Smith v. Kansas City Public Service Co., Banc, 328 Mo. 979, 43 S.W.2d 548, 555. Counsel for defendants in their brief and reply brief apparently regard plaintiff's objection to the plea as one going to its generality, citing cases to the effect that a general plea of contributory negligence is good if not attacked by motion. State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673; Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911. That is not the question primarily involved here; the question actually is whether, as stated in Smith, supra, this allegation was "merely a denial of plaintiff's cause of action," since it actually sought to cast all negligence upon plaintiff and thereby sought to exonerate the defendants. Our forms of pleading have been substantially liberalized under the Civil Code (section 509.040 RSMo 1949, V.A.M.S.) but there is still a substantive difference between contributory negligence and proximate cause negligence. In this instance, however, we find it unnecessary to decide whether this allegation might, under any circumstances, have operated as a plea of contributory negligence, for the reasons now to be stated. In passing, however, we may say that it is certainly not to be recommended.

It has been stated in various cases that if contributory negligence has been pleaded and if there is substantial evidence thereof, it is error for a plaintiff to fail to require a finding upon that issue in his verdict-directing instruction, *unless* such error is cured by an instruction submitting that issue on defendant's behalf. Marsh v. Heerlein, Mo., 299 S.W.2d 441; Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564. The rule has been criticized as illogical, in that it permits a conflict in instructions where the defendant does submit the issue and plaintiff does not, and also for the reason that the defendant should be held to have abandoned that affirmative defense unless he does choose to submit an instruction upon it. This point is not briefed here, and we do not consider the present case as a suitable vehicle for a reconsideration of the rule. We do, however, note these substantial criticisms of the rule.

In this case we have determined that the issue of plaintiff's negligence, as made by the defendants, was of direct and proximate cause negligence (at least suggestive of sole cause negligence), and that contributory negligence, as such, was not an issue; in other words, these combatants joined issue on the question of *which one* was guilty of such negligence, pro or con, as to constitute the direct and proximate cause of the collision; in this, we have construed the amendment to the answers in the light of the instructions given on behalf of the defendants. Defendants' given instructions refer to plaintiff's negligence in several places, but never as "contributory" negligence, nor was the word "contributed" so used; thus, plaintiff's alleged negligence was submitted in Instruction 4 as negligence directly resulting in the collision and thereby requiring verdicts for the defendants both on their counterclaims and on plaintiff's petition. That instruction did, it is true, negative contributory negligence on the part of the defendants, but that finding could only apply to their counterclaims and the reference could have no direct bearing on the other issues. It would be wholly illogical to say that any live issue of plaintiff's contributory negligence was raised or tried in this situation, for defendants chose to adopt and submit a different, and broader, theory. Plaintiff's verdict-directing instruction joined issue with the defendants upon the issue of negligence "directly" causing the injuries; so considered, the instructions are consistent and no live issue was ignored. Under these circumstances we hold that the assigned failure to negative "contributory" negligence did not render the instruction erroneous.

Plaintiff's Instruction No. 1, discussed above, after submitting defend-

ants' alleged negligence in proceeding against a red traffic light, further submitted in the conjunctive the failure of defendant Brizendine to keep a careful lookout ahead and laterally and whether, by so doing, she might not have seen plaintiff's car in such position and proximity as to create danger and in time to have stopped. The latter was a somewhat peculiar submission, bordering upon a humanitarian submission, but not including all its elements. Defendants say that this submission was broader than the allegations of negligence in the petition, citing, generally, several cases which hold that instructions must be confined to the issues made by the pleadings. Krelitz v. Calcaterra, Mo., 33 S.W.2d 909; Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24; Allison v. Dittbrenner, Mo. App., 50 S.W.2d 199. Plaintiff argues that the submission was properly embraced within the pleaded duty to keep a lookout, since the very purpose of keeping a careful lookout is to enable one to take preventive action upon the appearance of danger. There is some logic in this argument, but for another reason we hold the instruction not prejudicially erroneous. The theory of nonprejudice by reason of a conjunctive submission is recognized in our courts. Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W.2d 105, 107. Its scope has recently been limited somewhat and it is no longer recognized as a complete "cure-all" or remedy for all evils. Glowacki v. Holste, Mo., 295 S.W.2d 135; Wilson v. Kansas City Public Service Co., Mo., 291 S.W.2d 110, 117–118; Beahan, supra. It is still recognized, however, that where a questioned submission is not in itself a misdirection, but is simply not supported by the evidence or the pleadings (Beahan, supra), and the whole instruction is not so confusing or misleading as to be prejudicial, the rule of harmless error applies. We apply the rule here, and hold that if the latter part of the instruction was, perchance, broader than the pleadings, the error was harmless because the jury also had to find, and presumably did find, that the defendants were negligent in proceeding against the red traffic light, an allegation expressly pleaded, and in support of which there was substantial evidence.

■ Defendants' next point concerns plaintiff's damage instruction, No. 3; it is urged that it improperly permitted the jury to allow (a) "* * * any expense, to the reasonable value thereof, necessarily incurred by her, if so for medical attention made necessary by her injuries, if any"; (b) "such loss of earnings as you believe * * * directly resulted to her"; and (c) an allowance for "future impairment of her power to work," if such was found to be reasonably certain to result. In support of these objections it is stated: that the evidence was insufficient to support a recovery of medical expense; that there was no evidence of plaintiff's earnings, before or after the accident; and that there was no sufficient evidence of future impairment. On the first two points the contentions must be sustained. There was substantial evidence of a rather serious injury to plaintiff's left knee, of a superficial injury to her right knee, of a sprain of one elbow and of the right shoulder girdle, with limitation of motion in her neck, and of sprains of the lumbar sacral region and of cervical vertebrae. She was confined to the hospital for five days, and later a cast was applied to her left knee; she wore the cast for 6–8 weeks; she used crutches and a cane for a lengthy period. The evidence supports a contention of some permanent injury, particularly to her left knee, and probably of a residual nervousness. There was no evidence whatever of the cost of her hospitalization, of the amount paid to the physician who attended her in the hospital and for some weeks thereafter, or of the amounts paid to three other physicians who attended her more or less incidentally. On December 21, 1952, plaintiff began going to Dr. Rolla Pennell, a chiropractor, for treatment. He had a record of the number of times (80) he had treated her in 1952, and estimated the lesser number of treatments since; his charge was $2 per treatment, which he stated was a reasonable charge.

He also described her conditions generally and the nature of his treatments. Much of his treatment seems to have involved a curvature of the thoracic spine, which was not shown by him or otherwise to have been caused by this particular accident, even by any reasonable inference. He also adjusted frequently a recurring sacroiliac "subluxation" which might have been found to have been caused by the accident, in view of the original diagnosis made at the hospital. It might be said that the jury could have fairly estimated the total amount of Pennell's charges, but it would have been purely speculative, on this evidence, to have apportioned any definite part thereof to the treatment of injuries shown to have resulted from this accident. The defendants here are only liable for the cost of that treatment. The instruction permitted an allowance of the "reasonable value" of all medical expense made necessary by her injuries; as to the hospital bills and the fees of medical doctors there was no evidence whatever. For a somewhat similar situation, see Cordray v. City of Brookfield, 334 Mo. 249, 65 S.W.2d 938, where the instruction was held to be prejudicially erroneous because there was no showing of the amount expended for medicines, although the amounts paid to the physician were proven. As the court there held, so also is our instruction too specific to be classed as a mere "general instruction" permitting the defendant to request that the item in question be limited to a recovery of nominal damages. We have no possible way here of determining what the amount of any remittitur should be. See: the Cordray case, supra; Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 65, and cases there cited; Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 856–857; Anderson v. Glascock, Mo.App., 271 S.W.2d 243, 251; McDonough v. Freund, 323 Mo. 346, 19 S.W.2d 285. Nor can we say that this submission did not materially affect the amount of recovery. We must and do hold that the instruction was erroneous.

■ In view of the foregoing it will not be necessary to discuss in detail the other objections to the instruction. We do, however, hold that the evidence was insufficient in a pecuniary sense to support the submission of plaintiff's loss of earnings, and of the "future impairment of her power to work." There was undoubtedly substantial evidence to justify the submission of a future impairment so far as her injuries and condition were concerned, but nothing whatever was shown as to her past earnings. She had worked regularly for some years as a restaurant cook. Plaintiff cites cases holding, generally, that a jury may be presumed to know what the services of a common laborer or person of similar status would be worth. State ex rel. United Railways Co. v. Reynolds, 257 Mo. 19, 165 S.W. 729 (where the instruction was considered as merely general); Murray v. Missouri Pacific Ry. Co., 101 Mo. 236, 13 S.W. 817; McDonough v. Freund, 323 Mo. 346, 19 S.W.2d 285. We are unwilling to say that in our present-day economy a jury may know, without speculation, what a restaurant cook earns. The total amounts of what plaintiff had earned in three periods of work since the accident were fairly shown; the rates of pay were not specifically shown, but the length of the employment was fairly shown in two of these periods, from which the rates might be computed. These matters might well be amplified in the evidence on another trial, for purposes of comparison. The evidence showed that plaintiff had quit two of those employments by reason of her physical condition.

■ Since the case must be remanded, we now look, briefly, at defendants' other points to ascertain whether there was error prejudicially affecting the merits on the question of liability. When plaintiff was testifying her own counsel asked her concerning, and she related, a certain conversation had with defendant Brizendine immediately after the collision; this in no way involved the question of insurance.

On cross-examination defendants' counsel asked her to relate everything which was said in that conversation; she answered, as she had previously, but counsel again asked if that was all; plaintiff, thus urged, stated that she had asked defendant if "they had any insurance" and that defendant "didn't answer." Counsel for plaintiff objected at that point, but was overruled. Defense counsel thereafter pursued the subject, and asked plaintiff if the defendant had answered that question, and if anyone else had answered it; to both of these inquiries plaintiff's answer was in the negative. Thereafter and more specifically, defendants' counsel asked her again if she had inquired regarding insurance and whether she had gotten any answer. Later, and during defendants' evidence, counsel and the court discussed, informally and at the instance of defense counsel, whether the defendant Brizendine should be permitted to testify, as she had in her deposition, that she told plaintiff that they had no insurance, and that the plaintiff had said that she (plaintiff) did have. The court declined to permit counsel to make that showing. Regardless of the possible absence of a suitable record by an offer of proof, we hold that the court properly declined to receive that evidence. The whole subject was irrelevant and highly prejudicial; as we interpret the record, defendants' counsel first brought out the subject of insurance and continued to press it. The court stated at the time that evidence indicating that one party had insurance and that the other did not would force it to declare a mistrial, and that it had only permitted plaintiff's original answer to remain because she had stated that the defendant did not answer her question. Plaintiff's counsel had done nothing to bring on this situation, nor do we construe the record as showing an intentional volunteering of prejudicial matter by the plaintiff herself. Apparently defendants' counsel, in pressing the subject on cross-examination, had hoped to get an answer that one of the defendants had said that they had no insurance. There was no error in this ruling, and to have permitted the additional evidence would only have aggravated the situation. In many instances the showing of liability insurance is recognized as constituting reversible error. Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S.W.2d 961; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463; Gray v. Williams, Mo.App., 289 S.W.2d 463. And especially did the trial court here, having heard the witness and observed the jury, have a wide discretion in the premises.

Defendants assert here that Dr. Pennell, a chiropractor, was not qualified to interpret an X-ray which he had taken of plaintiff's thoracic spine. The point could only go to the amount of damages, but since the question may arise again, we consider it. The witness was a graduate chiropractor; he had very recently begun his practice when plaintiff came to him. The X-ray was made on January 8, 1952, about a month after he had opened his office, and when he was not quite 22 years of age. He testified that the study of X-rays was a necessary part of the course of study which he had completed for graduation; that he had made X-rays previous to this one and many since, and that the making and interpretation of X-rays was a part of almost every course of treatment in his profession. The objection made was that he was not shown to be a specialist in roentgenology and that his qualifications were insufficient. We note that he had practiced more than 4 years by the time this case came to trial. The qualification of one presented as an expert witness is a matter resting primarily in the discretion of the trial court. Wild v. Pitcairn, 347 Mo. 915, 149 S.W.2d 800, certiorari denied 314 U.S. 638, 62 S.Ct. 72, 86 L.Ed. 512; Christian v. Jeter, Mo., 287 S.W.2d 768, 771; Boring v. Kansas City Life Ins. Co., Mo., 274 S.W.2d 233. The objections now urged go largely to the weight of the testimony of this witness, a matter primarily for the jury. The fact that X-ray study is not prescribed as a mandatory subject for examination in § 331.030(4) is not

determinative; neither is it so prescribed for osteopathy (§ 337.020) or for the practice of medicine (§ 334.040). The question is rather whether the witness has been presumably qualified by the study of a prescribed course or by actual experience in practice. We note by way of analogy that in sundry cases a member of one branch of the healing arts has been permitted to testify as an expert, and more or less in opposition to members of another branch, where his testimony and the issue then involved concerned a matter inherent in the teachings of his school. Meyers v. Wells, Mo., 273 S.W. 110, loc.cit. 115; Grainger v. Still, 187 Mo. 197, 85 S.W. 1114, 70 L. R.A. 49; Cazzell v. Schofield, 319 Mo. 1169, 8 S.W.2d 580; Mann v. Grim-Smith Hospital and Clinic, 347 Mo. 348, 147 S.W.2d 606. This point is disallowed.

Counsel also say that error was committed when the court, upon the specific request of the jury, sent to the jury room three photographs of the intersection and one of plaintiff's car (all being plaintiff's exhibits), without sending also all of defendants' exhibits. None of the latter were photographs. We shall not consider the point, for it was in nowise raised in the motion for a new trial. By this we do not imply that the action was outside the realm of the trial court's discretion.

The point made that the verdict is excessive need not be considered. Defendants had a fair trial on the issue of their liability and there was very substantial evidence to support the jury's finding of liability on their part. There are many cases where, upon reversal, the whole cause should be retried to assure a fair result. We do not find that necessary here. Hufft v. Kuhn, Mo., 277 S.W.2d 552, 555–556; Wilson v. Kansas City Public Service Co., 354 Mo. 1032, 193 S.W.2d 5, 9–10; Spalding v. Robertson, 357 Mo. 37, 206 S.W.2d 517, 523; Alexander v. Kansas City Public Service Co., Mo.App., 268 S.W.2d 451. The judgment is reversed and the cause re-manded with directions to retry only the issue of the amount of plaintiff's damages and to enter judgment for plaintiff in the amount as so determined. Judgment will also be entered against defendants on their respective counterclaims.

All concur.