Hull, J.
This is a proceeding in error to reverse the judgment of the court of common pleas. The action or proceeding originated in the probate court, where John Wa~d and George Ward began proceedings for the allowance of a claim which they claimed to hold jointly against the estate of Mary Ward, deceased, for services which they claimed to have performed for her and upon her estate (after her death) looking after her farm and raising and taking care of crops thereon. Mary Ward was the mother of John and George Ward, There were certain other children, Mary, Dennis, Jane, Nathan and Charles, Mary Ward died November 6, 1879. John Ward was appointed executor of her will. On March 12, 1880, he gave bond as required by law, and letters of administration were issued to him. At the time of Mary Ward’s death there was money in the bank arising from the sale of products of the farm which she owned — ■ some one hundred acres of land — 'amounting to $1,500. After her death the growing crops upon the farm were disposed of and $1,080 realized therefor, making altogether $2,580 Mary Ward, by her will, gave this farm to her husband during bis life, and gave to one of her children $400, to another $1,200, and made some other bequests and legacies. John Ward, as executor, did not return this money in the bank — the $1,500 — as the property of the estate nor make any return of the growing crops on his mother’s farm, but filed his inventory and left them out. Some *755 i'time after that, exceptions were filed to his account by certain of the legatees and devisees, brothers and sisters, interested in this property. John Ward, as executor, returned no property except the personal property about the farm, .such as horses and wagons and some other small items. These exceptions having been filed, the matter was taken up in the probate court and the exceptions were there overruled. The case was appealed to the court of common pleas. • John defended against the exceptions on the ground that during the lifetime of their mother, and from the time that -John became of age, in 1867, pursuant to an arrangement made with their mother, he and his brother, George, had • cultivated the home farm, and after the family expenses were paid and occasional amounts of money sent to the ■other children, who were away from home, all of the proceeds of the farm,according to said arrangement and agree, ment, were invested, in the names of John and George, in various pieces of land, and therefore it was claimed John and George had the right and title to this money in the bank at the time of their mother’s death, by reason of that arrangement. John became of age in 1867, and his mother ■ died in 1879. George became of age in 1871.
In the trial in the probate court and in the common pleas -upon appeal, the claim was made that under the agreement ^between John and George and their mother, they were to run the farm in this way, and were to have practically all of the net proceeds of the farm after these expenses referred to were paid. The court of common pleas held against them on that defense, and held that there was no* sufficient evidence to warrant the court in finding that there was any such agreement'or arrangement made, and John was thereupon ordered to include in his inventory as executor this .-sum of $1,500 in the bank at the time of his mother’s death, and the $1,080, the proceeds of the crops. He thereupon •filed an inventory in which he included those amounts and became liable therefor personally upon his bond. After he •did that he and his brother, George, began a proceeding in the probate court, under section 6100, Revised Statutes, for allowance of a claim against the estate. John began dffiis alone,but mentioned his brother, George, in the claim. This proceeding was for the -allowance of a claim by the *756 probate court against the estate which John held,and which-he, as executor, could not allow, and in this cl.aim he asked compensation for his services upon his mother’s farm during the years 1878, 1879 and 1880, being for two years before his mother’s death and one year after. That matter was tried in the probate court, and George, after a time, withdrew his claim, and the claim of John Ward stood alone and it was allowed in full in that court, and upon appeal to the common pleas it was allowed for the sum of $800, for services performed up to the time of his mother’s death,November 26, 1879, the court of common pleas holding that services performed after her death could not be regarded as-being performed at her request and with her knowledge, and that part of his claim was disallowed,and the judgment of the court of common pleas was entered in favor of the allowance of this claim of John in the sum of $300 with interest,' A. petition in error is tiled here to reverse the judgment of the common pleas.
It is claimed by plaintiff in error that the judgment of the court of common pleas in overruling and disallowing the-claim of John and George, which they made against the exceptions which were filed to John’s account, is a bar to this action. It is claimed that that was in fact an adjudication of the claim that John makes here,
We do not think that this is so. The claim made in that case was, that there was an agreement between John and George and their mother that they should work this farm, look after it and cultivate it, and have all of the proceeds of the farm after the family expenses were paid. Upon, that claim, the court of common pleas held against John,, and judgment was entered against him, He then began his-proceeding in which he claims compensation for his services-in working his mother’s farm, either under an express or implied agreement for compensation for services, Now the-claims are essentially different, and the adjudication of one claim does not seem to us to bar the other. They are inconsistent, it is true, but they are entirely separate and distinct actions. He claimed in the one case that he was entitled to all the crops after the family expenses were paid;- and he now claims that there was an agreement that he was to have pay for his services, which is a very different claim. *757 from the one made in the original action, So that we are of opinion that the judgment of the court of common pleas in the first proceeding or action should not be held res adjudícala, so far as this claim is concerned,
It is claimed, however, that the judgment of the court of common pleas is not sustained by sufficient evidence and is against'the weight of the testimony. The case came on for hearing before the common pleas,and witnesses were called. John Ward,the claimant, was incompeent to testify to anything that happened before his mother’s death. George, however, having withdrawn from the action, was prepared to testify with regard to all that occurred during this period, and Mary and Dennis were also called and gave their version of the transaction.
It appears from the evidence in the case that there was no express agreement between Mrs. Ward and her sons, John and George, in regard to this matter. Mrs. Ward was the owner of the farm, and before John became of age, in 1867, the boys had been working the farm for her. James was in the army. These two boys were at home and working the farm. After John became of age they continued to work the farm, and after the debts were paid off, whenever any considerable sum of money had accummulated, it was invested in real estate, either in the name of John or George separately, or in their joint names, and nearly $8,000 was so invested from 1867 down to the time of Mrs. Ward’s death; about $1,000 was invested in the name of John; the amount invested in George’s name is not material,as he is out of the case, but it was about the same amount. Bu.t not only does the record fail to show that there was any express agreement made between Mrs, Ward and her sons, but the testimony expressly shows that there was no such agreement. Mary Ward was called and testified that this arrangement was carried on, and the farm worked by John and George, but that there was no express agreement, so far as she knows, for compensation; that she never heard of anything of that kind. She -was called by the plaintiff. She never heard anything of that kind from her mother or from either of the boys. George himself was called by the plaintiff, and he was asked, on cross examination:
Q. “Did you hare any agreement with your mother that *758 you were to have half of the proceeds of the farm?” A, “No, sir.”
Q. “I will ask you this question: Was there anything ••said by your mother that you were to receive or that John was to receive anything for his services by the month or by the year or by the day or by the week, in your presence?” A, “Not to my knowledge,”
Q. “Or by anybody else in her presence?” A, “No, air; I can’t recollect any conversation of that kind.”
Q. “Was there anything said by your mother to John Ward that he was to receive any pay for the years 1878 and 1879, in your presence, by your mother to John?” A. '“No, sir; not to my knowledge.”
Q. “Do you remember of any arrangement ever being made by your mother with John in reference to his being paid for his services?” A, “No, s>r.”
So that it is clear that there was no express agreement to pay him for his services. Does the record show an implied agreement? Is the evidence sufficient to warrant the court in holding that there ,was an implied agreement or contract to compensate John for his services? John’s original claim was entirely contradictory and in conflict with the claim that there ever was an agreement, either express or implied, that he was to be paid for his services. He claimed when the exceptions were filed to his account, that under this arrangement he was the owner of these crops; that he ran this farm, and that, as one or two witnesses stated it, he was the “boss” of the institution and ran and operated the farm a* though it were his own, the money going into a common fund — Ihe running expenses being paid out of the proceeds, ■and the money being deposited in bank in the name of John Ward, according to the testimony, Now that claim is inconsistent with his claim here, that he was to receive compensation for his services. Of course,if he ran and operated the farm and was to have all the proceeds of the crops, he would not be entitled to pay for his services. But, failing in that claim, he now claims that a contract should be implied here that he was to be compensated for his services. The general rule, as laid down by the authorities is, that as between father or mother and son, compensation for services rendered after one becomes of age and living at home, *759 as John did, will not be presumed nor can an agreement be-implied in the absence of such circumstances as clearly raise the inference of an implied contract. The presumption rather is that they are gratuitous; but this presumption may be overcome by circumstances showing that there was-an implied contract or an understanding that the services-were to be paid for.
A large number of authorities have been cited by counsel' for defendant in error upon this question, which, as we-think, sustain this proposition, many of them going to a considerable length, and in effect the rule seems to come down to this: That where the justice of the case requires-it, courts are rather apt to find that the circumstances of' the case were such that a contract or understanding should be implied. In one case it was held that a daughter might recover for taking care of an insane mother, who, of course, could not make a contract either express or implied, the-court holding that the services were rendered under such-circumstances that she expected to be paid therefor.
The court of common pleas held in the former case that’ there was no agreement that John was to have these crops-- or income of that farm, and ordered him to account for the money in the bank and the proceeds of the crops. The evidence here shows expressly that there was no express* agreement. The evidence show^ farther, and is uncontradicted, that the arrangement, if there was any, between the-mother and the sons simply was an arrangement that the-boys should continue to vsork the farm as they had before they became of age,and after the family expenses were paid,, whatever there was left, was invested in the name of these sons. There was no express agreement about it-and very little was said about it,according to the testimony of Mary. She says that her mother seemed interested in the boys, was anxious to have them get along,and the money was deposited in the bank in the name of John, who kept looking out for pieces of real estate, and if any was bought it was-bought in the name of John or George, or both of them, and that arrangement continued fora period of twelve years, when the mother died. We are unable to find from this record sufficient evidence to sustain the contention that there • was any agreement here, either express or implied, that: *760 John should be paid for his services that he performed upon this farm; but, on the contrary, it seems to us that all of the evidence in the case,practically,is against such a theory. Nothing of that kind was ever spoken of between them during those twelve years, and nothing was ever done by John or his mother that indicated that either she or John had any idea that he was to be paid for his services rendered on that farm. She was permitting him to run her farm as he saw fit and manage it and sell the produce and deposit the money in the bank in his own name, and invest it in real estate in his own name, but those facts do not raise an implied contract that he was to be paid for his services in running and managing the farm; nor does the fact that the court of common pleas found that there was no agreement between him and his mother that he was to have the crops, warrant us in finding that there was an agreement, either express or implied, that he was to receive compensation for his services for this remaining period before his mother’s death. The truth is John has been paid and paid well for these services. According to the'testimony of the plaintiff, his services were worth $250 to $300 a year for what he did on this farm. The' record shows that during these twelve years there were bought out of the proceeds of this concern, and the title taken in John’s name, one piece of property worth $1,500; another, $800; another $1,050 and another $600, making all together real estate purchased to the amount of $3,950, and it was presumably worth that much, as John bought in at the prices he thought it was worth. So that during that twelve years that John lived upon this farm of his mother, he reaped as the profits of his work $3,950, after taking out of the gross receipts his living expenses, and at the time of his mother’s death he had in his own name real estate of the value of nearly $4,000, and if his mother had not, unfortunately for John, died when she did, the $1,500 in the bank undoubtedly would have been invested in another piece of real estate, either in the name of John, or John and George together. But she died with that amount in the bank and with crops growing upon the land. And the fact that John so received these proceeds for twelve years, it seems to us, does not afford sufficient evidence by any means that there was a contract *761 between him and his mother that he was to be compensated for his services at so much per month,or so much per year. Nor are the circumstances such that the court should infer that there was an understanding between him and his mother that he was to receive financial compensation for the .services which he performed.
We are also of the opinion that John’s claim is barred by the statute of limitations. His claim accrued, if he had any, some twenty years before he began this action. Under the statute, a claim upon such a contract, express or implied, is barred within six years. Whatever portion of that claim accrued before his mother’s death the statute of limitations began to run against before her death occurred, and it had run nearly twenty years when these proceedings were commenced. He was the executor of the estate, it is true, but we do not understand that the fact that a man is executor of an estate permits him to hold a claim twenty years against the estate without commencing any proceedings thereon. We think, further that it was barred under section 6113, Revised Statute, which provides that “No executor or administrator, after having given notice of his appointment, as provided in this chapter, «hall be held to answer to the suit of any creditor of the deceased unless it be commenced within four years from the time of his giving bond as aforesaid, excepting in the cases hereinafter mentioned.” It is not necessary to read the exceptions, because this does not come within any of them.
But it is urged that this statute should not bar John, for the reason that he was holding this money in trust; and, further, that section 6113, Revised Statutes, does not apply, for the reason that these proceedings which were begun by John in the probate court did not constitute an “action,” or suit against the executor or administrator; but it seems to us that, to all intents and purposesa proceeding commenced under section 6100,Revised Statutes, by an administrator for the allowance of a claim which he owns himself, is an action or suit in his behalf, and so far as that proceeding is-concerned, he is not the executor of. the estate. The probate judge sits in his place as the statute provides, and passes upon the claim and allows or disallows it after hearing evidence, and. the statute provides for exceptions being *762 taken and proceedings upon error or appeal as in other actions and for a bill of exceptions, and the proceeding is-treated in all respect’s as an action in favor of the claimant,, and the allowance of the claim on behalf of the administrator or executor is, to all intents and purposes, a judgment? in his behalf,
By section 6113, Revised Statutes, it is provided that an-administrator or executor shall not be liable unless suit is-commenced within four years from the time of giving his-bond; the purpose of which is to give repose to estates'and' in order that the heirs and others interested in the estate-may know that all claims which have not been presented* are barred, and so that the purchasers of real estate my know that so far as these claims are concerned,their title is. good;-, and it does not seem to us that it would be according to the spirit of the act to hold that this statute should not apply to an executor or administrator who has held his claim against-the estate of his mother for nearly twenty years, whatever-his reasons may have been for holding it.
It is said here in argument that the record does not show that any notice of appointment was ever in fact published, and section 6113, Revised Statute, provides “No executor or administrator, after having given notice of his appointment, as provided in this chapter, shall be held to answer-to the suit of any creditor of the deceased, unless it be commenced within four years, from the time of his giving-bond as aforesaid” etc. But the section of the statute requiring him to give notice provides that the executor or administrator shall give notice by publication within three-months after his appointment, Now, if he fails to give notice — he being the executor himself — if he fails to perform this duty which the statute imposes upon him, we are of the opinion that he cannot take advantage of his own wrong. The purpose of this notice is to notify outside creditors and the world in general, and is not for the purpose of notifying-the executor himself that he has been appointed as executor of the estate; he, of course had knowledge of that, and took" out letters of administration and gave bond in 1880’, He-cannot take advantage of his own neglect to publish notice.
We hold that the judgment of the court of common plea&i should be reversed for the reason that it is not sustained by- *763 sufficient evidence and is contrary to the weight of the evidence, and for the further reason that the claim of John Ward is barred by the statute of limitations. It will be remanded to the court of common pleas for proceedings according to law, and this to be at the costs of defendant in error in- this court.
A. W. Eckert and C. W. Everrett, for John Ward.
Bay & Cordell and T. L. Gifford, for Contestants.
Note— T. L. Gifford, for Plaintiff in Error: Section 6100, Rev. St., under which this proceeding is brought does not in terms specify in what manner or form such a claim as this is should be presented for allowance. The statute provides that when an executor or administrator has a personal claim against the estate which he represents, it is necessary for him to present the same to the probate court to be proved and allowed by said court. He eannot allow said claim himself. Not until the matter is appealed to the common pleas court does the statute indicate how the matter may be presented and tried. Sec. 6101 R. S., provides that when the matter has been appealed to the common pleas court pleadings may be ordered to be filed in which the issues may be made up upon which the matter is to be tried.
(1.1 Plaintiffs claim for compensation is barred by the stat' ute of limitations. A demurrer will always lie to interpose the-defense of the statute of limitations if the bar appears on the face of the pleading. In this case,the motion shows that Mary Ward died November 6, 1879, and the contract, if any there were,must have been entered into prior to that date. The motion itself asserts that the latest date on which any part of the claim matured was on January 1st, 1881. The time that elapsed between that date and the one on which this proceeding was commenced is more than eighteen years. No reason is assigned in the motion why the bar of the statute of limitation will not apply. In order to get around the bar of the statute, some allegation must be made that will remove the bar. 32. Ohio St., 235; 44 Ohio St., 12; 8 Ohio St., 215.
(2.) The motion for allowance of the claim for compensation, shows that the matter of compensation for services has already been adjudicated. This defense is generally made by answer, but as no answer was permitted to be filed in this case.it could' not be raised in that manner. However, if such a defense appears on the face of a pleading, it may be raised by demurrer. Bigelow on Estoppel, 706; 50 Ind., 410.
Upon an examination of the allegations of the motion in this-case, we find that it states that the ground of defense made in the former trial was an agreement between the deceased, Mary Ward, and the defendant in error, and his brother George, which agreement provided that they were to have compensation for their services and that that compensation was to consist of all the surplus proceeds of the farm after certain ex *764 penses mentioned were paid. The motion also states that under the judgment of the court in that case, they were denied any compensation for said services. In that case then was determined the issue as to whether there was any agreement between John Ward and hia mother that he and his brother were to receive any compensation for service rendered as claimed. This question then having been determined in that proceeding cannot again be relitigated. 7 Ohio St., 157 162-4; 12 Ohio St., 35 and 36; 27 Ohio St., 233, 235, 239; 27 Ohio St., 674, 677 ; 28 Ohio St., 600-601; 28 Ohio St., 668; 18 C. C., 392.
In order to maintain this action, it is necessarj for John Ward to allege clearly and satisfactorily that the services for which compensation is sought to be recovered in this action are not the same services for which compensation was sought in the former action, and that the agreement olaimed is an entirely separate and distinct agreement. Bigelow on Estoppel, 97, 703, 717; 2 Johns, 227; 18 Mon. B. (Ky.) 519.
It is not allowable to allege certain facts as a cause of action and after judgment on the merits, to allege a different. state of facts to support a demand for the same relief. 42 Ohio St., 141; 31 Ohio St., 397, 404-5; 41 Ohio St., 62, 64; 57 Ohio St., 132, 137-143; 60 Ohio St., 361, 365; Bigelow on Est., 86; 60 Ohio St., 1.
(3.) No valid claim for servioes can be maintained upon a quantum meruit in this state by children against a parent, unless by virtue of a contract made with such parent or parents which shall provide that compensation shall be paid. 2 C. C., 143; 4 C. C., 11; 4 L B., 908; Beach on the Modern Law of Contracts, sec. 645; 28 Ill. 378; 6 N. H., 481; 37 Conn., 375; 18 Ohio St., 447.