**Mary BOYHER, Plaintiff-Respondent,**

v.

**ESTATE of Lucas B. GEARHART, Michael Joseph Hart, Executor, Defendant-Appellant.**

No. 31253.

St. Louis Court of Appeals.

Missouri.

April 16, 1963.

**2**

Burton H. Shostak, Robert E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellant.

Robert E. Morley, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is a claim filed by plaintiff, Mary Boyher, in the Estate of Lucas B. Gearhart, deceased, in which action a recovery is sought for the reasonable value of services alleged to have been rendered the deceased during his lifetime. The cause was transferred by the Probate Court to the Circuit Court where it was tried to the court. The trial resulted in a finding and judgment for plaintiff in the sum of $5,352.-00. From this judgment defendant has appealed.

Deceased was a man 65 or 70 years of age. In July 1955 he resided at 1923 LaSalle Street, in the City of St. Louis. His wife died in May or June 1955. Plaintiff was decedent's niece and began living with him in May 1955. The relationship between these two people was very good, one of the witnesses stating, that "he seemed to be more like a father to her than an uncle" and that "if he had been her own father, I don't think she could have treated him any better." No one else lived with decedent at the time plaintiff moved into the premises. In July 1955, Mr. Gearhart was very ill. He could not get out of a chair without assistance. His ankles were swollen and he had to be assisted to his bed. During the first two months that Mary was there his health improved. In fact it got to the point where he could get up and around and could leave the house. However, he did not get completely well. Plaintiff stayed with Mr. Gearhart until April, 1956. After Gearhart's health improved, plaintiff secured a job with a dress company for a couple of weeks, working a few hours each day. She worked mornings and would get home about 3 P.M. She quit this job to take care of Mr. Gearhart. During the period she lived with Gearhart she worked in the kitchen preparing meals for him; she carried coal from the basement to fire the kitchen stove; she did his laundry and sewing. She put him on a diet and prepared special foods for him, and, at times when he was seriously ill, would assist him to his bed and to the bathroom. She did the housekeeping.

Plaintiff left decedent's home in April, 1956, but returned in November, 1956, when he became ill and stayed until May, 1957. His condition was so bad when she first came back that it was recommended that he go to a hospital for a check-up. Decedent was admitted to Firmin Desloge Hospital on December 4, 1956, and remained there until December 16, 1956. The diagnosis of Mr. Gearhart's condition at the time as shown by the hospital record was bronchopneumonia, alcoholism, Laennec's cirrhosis, generalized arteriosclerosis, arteriosclerotic heart disease and obstructive emphysema. After plaintiff returned to decedent's house in November, 1956, she performed the same services for decedent that she had during the first period of her

stay. She moved out of decedent's home in May, 1957, because decedent tried to get plaintiff in bed with him. When decedent was asked about this by one of the witnesses he did not confirm or deny it, but tried to pass it off as a joke.

Decedent had two or three houses on LaSalle Street and property in St. James, Missouri, of some fifteen to twenty-five acres. Eugene Johnson, plaintiff's witness, testified that Gearhart told him that plaintiff was the only one who ever did anything for him, and that he was going to give her all the houses he owned in return for her having been so good to him and for taking care of him. He also testified that "actually all the time I knew him I never heard him say anything bad about her" and that decedent usually expressed gratitude for what plaintiff was doing for him, and said he intended to give her something to make up for it; that because of what Mary had done for him in caring for him, he was going to give her those pieces of property.

About January 8, 1957, the following document was executed.

### "CONTRACT

"I the undersigned Lucas B. Gearhart do hereby employ and direct O. M. Carey to have my real estate appraised and to have a general warranty deed and deed of trust drawn and to employ a lawyer. Therefore appointing O. M. Carey, Trustee of the deed of trust giving to said O. M. Carey, full and complete authority for and in my name and stead to see to the execution and sale of said property located at 1823–25–27 LaSalle, St. Louis, Mo., and

"I further appoint and authorize O. M. Carey to handle any and all further business matters relating to my real and personal property in my name and stead.

"As he has represented my interest for many years, I hereby direct him in case of my sickness or disability to see that I am properly provided for and in case of my death he will see to it that my affairs are settled according to law and upon rendering a statement of his services, and all claims and demands, which is to be paid out of my estate as a preferred claim.

"I am selling the above real estate to my niece, Mary Boyher, with the condition that she properly provide for my maintenance and unkeep to my satisfaction or the satisfaction of O. M. Carey. Said O. M. Carey to undertake collection of accrued notes and as paid to surrender same to my niece.

"However if my niece does not provide for me to my satisfaction or satisfaction of O. M. Carey, O. M. Carey is authorized and directed to foreclose on the property and resell same.

"In case of my death, he is directed to collect from the note(s) as they become due to the extent of my indebtedness to pay same and surrender balance of said notes to my niece without further payment, if this contract proposal has been complied with to the satisfaction of the trustee.

"In witness whereof, I have read the foregoing, know its contents and do sign my name as my free act and deed.

"/s/ L. B. Gearhart,
"Lucas B. Gearhart.

"/s/ Ondo Johnson
"/s/ Gladys Johnson

"Be it known that Ondo Johnson and Gladys Johnson being requested to witness the signature of this instrument do hereby certify that at Mr. Gearhart's request; he read the foregoing, we were asked to sign the foregoing statement and we certify that it was the statement of a person in full possession of his faculties, witnessed and signed as our free act and deed after his re-

quest for the purposes therein mentioned.

"PROPOSAL
&
ACCEPTANCE

"I Mary Boyher after reading the foregoing instrument accept its terms and conditions in its entirety and without modification or revocation, all understandings being expressed therein. in.

"/s/ Mary Boyher."

The foregoing document was prepared by a lawyer from information given to him by Mr. Carey, who in turn secured said information from Mr. Gearhart and plaintiff. The so-called contract was admitted into evidence as an expression of Gearhart's intent to pay plaintiff for her services. Mr. Carey testified that between November 1956 and May 1957, no one else performed any services for the decedent other than plaintiff.

Tom Elmer White was the only witness called by defendant. He rented a home from decedent during the first part of 1955. He testified that from the summer of 1955 to December 1956, his wife worked for decedent; that she would fix his meals for him; do laundry and sweep and mop the floors. Witness White stated that he also did work for Mr. Gearhart such as cutting the grass every two or three weeks. Both Mr. White and his wife filed claims against Gearhart's estate. White further testified that from November 6 to December 6, 1956, decedent stayed at the White's home because he was ill.

Appellant's first point is that the judgment should be reversed for the reason that the evidence was insufficient to support a recovery by plaintiff. In this connection it is urged that the evidence showing that plaintiff was related to decedent and lived with him in the same household gave rise to a presumption that the services rendered were gratuitous, which presumption was not overcome by any convincing evidence, or proof of any contract or mutual understanding to the contrary.

■ Where valuable service is rendered by one person for another, and such is accepted by the person for whom such service is performed, the law will presume an implied promise to pay. Smith v. Sims, Mo. App., 258 S.W. 1032; Abresch v. Schultz, Mo.App., 216 S.W.2d 134; Taylor v. Currie's Estate, Mo.App., 83 S.W.2d 194; Sprague v. Sea, 152 Mo. 327, 53 S.W. 1074. However, where a family relationship exists between the parties, or where there is a relationship of such a character as would lead a reasonable person to believe that a person occupying such relationship would more likely render the service gratuitously than for compensation, the implication does not arise, but on the contrary, it will be presumed that the service was intended as a gratuity. Abresch v. Schultz, supra; Taylor v. Currie's Estate, supra; Hyde v. Honiter, 175 Mo.App. 583, 158 S.W. 83; Cole v. Fitzgerald, 132 Mo.App. 17, 111 S.W. 628. And the burden in such cases rests upon plaintiff to dispel such presumption by evidence tending to show that the parties intended and understood that the service was to be paid for by the recipient thereof. Kingston v. Roberts, 175 Mo.App. 69, 157 S.W. 1042; Taylor v. Currie's Estate, supra; Hyde v. Honiter, supra; Wood v. Lewis' Estate, 183 Mo.App. 553, 167 S.W. 666; Fitzpatrick v. Dooley, 112 Mo.App. 165, 86 S.W. 719.

■ It has also been held that relationship either by consanguinity or affinity is not sufficient to raise a presumption that beneficial services rendered and accepted are gratuitous, except where the relationship is that of parent and child. Hyde v. Honiter, 175 Mo.App. 583, 1. c. 598, 158 S.W. 83, 87. Thus the relationship of uncle and niece does not alone raise a presumptioin of gratuitous service where they are not mem-

bers of the same family. 98 C.J.S. Work & Labor § 23, p. 754.

■ The term "family" is one of great flexibility and is capable of many different meanings according to the connection in which it is used, but its meaning within the rule herein discussed has been defined by this court in the case of Offord v. Jenner's Estate, Mo.App., 189 S.W.2d 173, 1. c. 176, as follows:

"The term 'family,' within the rule above mentioned, has been defined as a collective body of persons under one head and one domestic government, who have reciprocal, natural, or moral duties to support and care for each other. Wood v. Lewis' Estate, 183 Mo.App. 553, 167 S.W. 666; Birch v. Birch, 112 Mo.App. 157, 86 S.W. 1106; 71 C.J. 55."

This definition was approved in Steva v. Steva, Mo., 332 S.W.2d 924, and Sevier et al. v. Estate of Staples, Deceased, etc., Mo. App., 309 S.W.2d 706.

■ In the case at bar plaintiff did not move into decedent's premises until after Gearhart's wife died. At that time decedent was ill and in need of nursing service and the services of a housekeeper and cook. Plaintiff was under no legal or moral duty to render this service; nor was there natural, legal or moral duty on the part of either to support the other. We find the evidence wholly insufficient to show that plaintiff and deceased were members of a family under the facts and circumstances shown. Nor was there any evidence of such a relationship between the parties which would lead a reasonable person to believe that plaintiff intended her services as a gratuity. Under such circumstances the law implies an agreement that the services were to be paid for.

It is also our view that the evidence shows that Gearhart intended to pay for the services rendered and that plaintiff expected pay for the same. This is established by the testimony of the witnesses, who testified to declarations by decedent, the document signed by both parties, which we have heretofore set forth, and the character of the work which plaintiff performed. Cole v. Fitzgerald, supra. The trial court did not err in ruling that plaintiff was entitled to recover.

■ Finally it is urged that the trial court erred in rendering judgment in any amount other than nominal damages for the reason there was no evidence offered by plaintiff of the reasonable value of the services rendered. We find no merit to this contention. Plaintiff, during the period she resided with decedent, rendered nursing service and did domestic work. Such being the case, there was no necessity for the introduction of opinion evidence as to the value of such services. Said value is a matter of common knowledge, and evidence thereof is not essential to a recovery in quantum meruit. The trier of facts may reach its own conclusion without evidence on the matter. Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875; McDonough v. Freund, 323 Mo. 346, 19 S.W.2d 285; Wise v. Rubenstein, Mo.App., 24 S.W.2d 203. We find that the amount found by the trial court represents the reasonable value of the services rendered by plaintiff in this case.

The judgment is affirmed.

SAM C. BLAIR and PHIL H. COOK, Special Judges, concur.

RUDDY and WOLFE, JJ., not participating.