Elizabeth HART, Plaintiff-Respondent,

v.

Art WOOD, Administrator of the Estate of
Lucy Ann Louise James, Defend-
ant-Appellant.

No. 8330.

Springfield Court of Appeals.

Missouri.

May 27, 1965.

Rehearing Denied June 22, 1965.

John A. Honssinger, Lebanon, Claude T. Wood, Richland, for defendant-appellant.

J. W. Grossenheider, Lebanon, for plaintiff-respondent.

HOGAN, Judge.

In this case, the respondent claimant sought to recover the sum of $1,000.00 for services rendered to Lucy Ann Louise James, deceased, during a three-year period from the fall of 1956 to September 1959. The claim was originally filed in probate court and was transferred to circuit court for a jury trial under the provisions of Section 473.420, par. 2.[1] The jury awarded the claimant the sum of $400.00, and the defendant administrator has appealed.

Miss James was a single woman of advanced years who, during the period in question, lived alone on a small farm near Lebanon in Laclede County, Missouri. Mrs. Hart, the claimant, is a member of the Sutherland family, whose home is only a short distance from Miss James' farm. During the time with which we are concerned, the claimant's brother, Mr. James Sutherland, and her sister, Mrs. Elsie Crall, lived with their father at the Sutherland home. The claimant did not live there, although she lived in the neighborhood. This case actually represents but one aspect of a claim originally made jointly by the claimant, her brother and her sister. The Sutherlands were not related to Miss James though, as might be expected, a number of the members of the community were related to the decedent in one degree or another, including the wife of the appellant administrator. It should also be noted

1. Unless otherwise noted, all references to statutes are to RSMo (1959), V.A.M.S.

that subsequent to the period here involved, Miss James became ill and was declared incompetent. During the period from September 8, 1959, to the date of Miss James' death on November 24, 1960, Mrs. Hart served as Miss James' guardian, and this claim was filed after Mr. Wood had qualified as administrator of Miss James' estate.

██ A considerable amount of proof was adduced by both parties upon the trial of this case, and on many points the evidence is in spirited conflict. However, in determining whether the claimant made a submissible case, we must review the proof in the light most favorable to the claimant, considering all factual inferences which a jury might reasonably have drawn and setting aside all evidence unfavorable to the result reached. Ashley v. Williams, 365 Mo. 286, 290, 281 S.W.2d 875, 877–878 [1]; Allmon v. Allmon, Mo.App., 314 S.W.2d 457, 459 [1]. So considered, there is substantial evidence that in 1956 Miss James returned to her farm home from a boarding or rooming house where she had been staying; at that time she was approximately 72 years old and was physically, and possibly mentally, unable to care for herself and attend to her elementary needs. In the language of one witness, "she wasn't able to do nothing, or stay by herself," and in the words of another, she was unable to care for herself because she was "feeble-minded."

The Sutherland family, consisting at the time of the claimant's sister, brother and father, lived nearby, approximately one-fourth mile from Miss James. The claimant did not live in this house but was frequently there. The basis of the claim is that the three members of the Sutherland family cooked, washed, ironed, and provided other personal services for Miss James from the fall of 1956 to September 1959, before Miss James contracted her terminal illness, and indeed the claimant's evidence indicates that during that period Miss James became almost completely dependent upon the Sutherland family.

The claimant's proof was that Miss James would telephone one or another member of the Sutherland family several times daily asking to be assisted with some household chore, or asking that some errand be run. Several nights a week, the decedent would call at the Sutherland home, "a lot of times * * * while we was eating supper," and would remain until about 10:00 P.M. Sometimes she would spend several consecutive nights at the Sutherland home, and on other occasions she would call during the day.

Miss James owned no automobile and was unable to drive. When she had business to transact in town, either the claimant or some member of her family would, at her request, transport her to town to attend to her business. The claimant's evidence was that the nearest grocery store was six miles away. The decedent bought groceries in small quantities, and "two or three times a week" Mrs. Hart would either drive the claimant to the grocery store or purchase and deliver Miss James' groceries for her while the claimant was purchasing her own. Miss James cooked and heated her home with a wood stove, but she was unable to cut or carry her wood, and as a consequence Mrs. Hart and the other Sutherlands were obliged to see that the decedent was provided with fuel, and quite often were required to prepare her meals for her.

Other services rendered to Miss James by the claimant were of a very personal nature. Though there is, as we say, evidence to the contrary, the claimant's proof was that Miss James was slovenly, unkempt, and dirty much of the time, and indeed one witness testified that she was sometimes covered with vermin.[2] Mrs. Hart (and sometimes Mrs. Crall) bathed Miss James, pared her toenails, and shampooed her hair in order to keep her clean, and either one or the other regularly washed and ironed Miss James' clothing. The claimant's evi-

---

2. "Seed ticks," according to this witness, which had "turned."

dence was that all these services were rendered at Miss James' request. This is, in a general way, the substance of the claimant's case, but other facts will be more specifically noted in the course of the opinion.

The appellant's first point, which he makes rather indirectly, is that the claimant made no submissible case as to her claim for transportation furnished because she made no proof of the value of those services. Relying heavily upon our ruling in Allmon v. Allmon, supra, 314 S.W.2d at 463–464 [11] [12, 13], the appellant has painstakingly and rather elaborately drawn a factual parallel between this case and the Allmon case, arguing that the evidence furnishes no guide whatever for the jury to determine the distances involved, the mode of transportation used nor the expenses incurred on the trips, and that there is no evidence whatever of the reasonable value of the transportation furnished. The respondent answers this point by saying that the services rendered were such that their reasonable value was a matter of common knowledge, and therefore it was unnecessary to prove their value.

■ Of course, cases of this kind sound in quantum meruit, and ordinarily it is essential for a plaintiff in quantum meruit to make proof of the reasonable value of the services rendered or the materials furnished. Williams v. Cass, Mo.App., 372 S.W.2d 156, 161 [10, 11]. An exception is made to this rule, however, where the value of the services furnished is a matter of common knowledge, Ashley v. Williams, supra, 365 Mo. at 294, 281 S.W.2d at 881 [10]; In re Hartle's Estate, Mo.App., 236 S.W.2d 40, 41–42 [1]; 98 C.J.S. Work and Labor, § 57, page 807, and our courts have quite often said that the value of domestic services is a matter which the jury may determine from its own knowledge without the aid of opinion evidence. Ashley v. Williams, supra, 365 Mo. at 294, 281 S.W.2d at 881 [10]; Murray v. Missouri Pac. Ry. Co., 101 Mo. 236, 240–241, 13 S.W. 817, 818 [2]; Boyher v. Gearhart's Estate, Mo.App.,

367 S.W.2d 1, 5 [5, 6]; Wise v. Rubenstein, Mo.App., 24 S.W.2d 203, 205–206 [6].

We do not understand the appellant administrator to question these general principles. He carries his argument a step further, however, and in effect argues that since the respondent claimed compensation for furnishing transportation, as well as for the domestic services she rendered, she was obliged to make proof of the value of the transportation furnished, because that was not a matter within the common knowledge of men. We think we must reject this contention. We can readily agree that the testimony bearing on the claim for "transportation" is diffuse and somewhat indistinct, but we cannot agree that the evidence wholly fails to show the nature of the services rendered as "transportation" services, nor do we interpret Allmon v. Allmon, supra, 314 S.W.2d at 463–464 [11] [12, 13], as a ruling that services of the kind here characterized as "transportation" cannot be evaluated by a jury as a matter of common knowledge.

What the respondent laid claim to, so far as "transportation" is concerned, was compensation for doing Miss James' marketing, and on occasion providing her with a ride to "town" to attend to business or consult a physician. There was substantial evidence from which a jury could have found that it was about six miles to the nearest grocery store, and that Mrs. Hart, sometimes accompanied by another member of her family, did Miss James' marketing "at least" once or twice weekly during the three-year period involved. There is also substantial evidence from which a jury could infer that it was about twelve miles to Lebanon, or "town," and that Miss James rode to Lebanon with Mrs. Hart about three times a month. There is also evidence that, on occasion, Mrs. Crall would accompany the claimant and Miss James to Lebanon so that Mrs. Crall could assist Mrs. Hart in caring for the decedent.

■ We do not follow the appellant's contention that the respondent's claim must

be construed as a claim for the value of transportation on a mileage, or unit cost, basis. We think the claimant's proof is quite as readily subject to the inference, as far as "transportation" was concerned, that she sought to recover simply for the inconvenience or discommodity involved in doing the marketing and making the periodic trips to Lebanon. In other words, the claimant was seeking compensation as Miss James' driver, companion and errand girl, rather than as the operator of a private carrier. We have the view that it was for the jury to determine whether these services in fact had any value, and that their value, if any, was a matter which the jury could appraise without the aid of opinion evidence. Lovinger v. Anglo California Nat. Bank, Cal. App., 243 P.2d 561, 567–568 [4] [5–7]; cf. Wysowatcky v. Lyons, 137 Colo. 578, 328 P.2d 576, 577. Nor do we think, as the appellant argues, that the claimant is to be penalized because her sister sometimes helped her in performing these services. The fact that the claimant was assisted by others would not necessarily deprive her services of all value. See Thrasher v. Allen Estate, Mo.App., 291 S.W.2d 630, 631. We must rule this point against the appellant.

The appellant's next point, which is really two points, requires the recital of some additional facts. Subsequent to the period during which the claimant's services were rendered, Miss James suffered a severe illness, brought on either by a "heart attack" or a "stroke," and she was thereafter declared incompetent by the Probate Court of Laclede County. Mrs. Hart was appointed as guardian of her person and estate. Records of the probate court offered in evidence by the appellant (but excluded by the trial court) indicate that Mrs. Hart was appointed on September 8, 1959, after notice and a hearing, and that she qualified by filing a bond on the same day. It is, however, stipulated that no notice of the issuance of letters of guardianship, as required by Section 475.140, was ever prepared or published. We may deduce from the papers

offered in evidence by the appellant that Mrs. Hart continued to act as the decedent's guardian until Miss James' death on November 24, 1960, and then suggested the death of her ward to the probate court.

The papers in the file offered by the appellant indicate that on November 25 the probate court made an order reciting that the death of the ward had been suggested, further reciting that " * * * the Court not knowing of any debts being left by the deceased for which the estate would be liable," and directing the guardian, Mrs. Hart, to pay the "funeral and burial expenses and inheritance and estate taxes * * * for which the estate * * * would be liable * * * *" and thereafter to file a final settlement. On December 1, 1960, the guardian filed a settlement showing the payment of various items totaling $2,065.13. The settlement filed shows on its face, among other things, that the ward's estate was insufficient to pay all the claims against it. It appears to be the only settlement filed by Mrs. Hart during the entire period of her guardianship, and on the reverse side of the paper it is recited that the settlement has been "examined, approved and filed." No offer was made of any of the records of the probate court which are required by Section 472.280 to be kept, and although counsel referred to a final order discharging the guardian, it was not offered. It does not appear from the records offered that any notice was given of the settlement filed, if indeed it was a final settlement.

On the basis of the contents of this file, and the inferences he maintains may be drawn from it, the appellant asserts that the claimant's action was barred by limitation, because Section 475.210 bars fully matured claims against the estate of an incompetent after nine months, and the claim here asserted had fully accrued before the institution of the guardianship. In this connection, the administrator argues that even though no notice of the issuance of letters of guardianship was given, the claimant had personal knowledge of her own claim, and, in appellant's words, she should

not be allowed to take advantage of her own neglect to give the required statutory notice to creditors. The appellant further maintains that since it had been found that there were no claims outstanding against the estate, there has been a former adjudication that the respondent has no claim and that she is barred from recovery here by the doctrine of res judicata.

Conceding a certain force to the appellant's arguments, we think his points cannot be sustained. The tenor and suggestion of his argument that the claim is barred by limitation is that respondent's claim accrued before the commencement of the guardianship on September 8, 1959, and was therefore barred by Section 475.210, which is a statute of non-claim barring claims against the estate of an incompetent (except claims for taxes and contingent claims) based on liabilities arising prior to the guardianship if they are not filed nine months after the first insertion of publication of notice of the letters of guardianship. The respondent claimant answers that no notice of the issuance of letters was ever published to set Section 475.210 in motion, and this is admitted. The appellant rejoins, however, that the claimant, having been the guardian, and having had knowledge of her own claim, cannot now take advantage of her own neglect to give the statutory notice.

It is unnecessary to construe the statutes involved here at length, or to trace their past legislative history. Assuming that Section 475.140, which provides for notice of letters of guardianship, serves the same general purpose as its predecessor,[3] publication is required so creditors may be notified to present their demands or be barred, 2 Woerner, American Law of Administration, Section 385, page 1242 (3rd ed. 1923), and publication of notice is required to start the running of the statute of non-claim. Alexander v. Wyatt's Estate, 241 Mo.App. 550, 553–554, 244 S.W.2d 121, 122 [1, 2] ; II

Limbaugh, Missouri Practice, Section 760 (b), page 111. Actual notice is not sufficient to set the statute of non-claim running in favor of the estate. Alexander v. Wyatt's Estate, supra, 241 Mo.App. at 553–554, 244 S.W.2d at 122 [1, 2] ; Doerge v. Heimenz, 8 Mo.App. 255, 257. Had the claimant been a creditor of the class included in Section 475.210, her claim would not have been barred, for no notice was given of the issuance of letters of guardianship.

But the appellant further argues that, having failed to give the notice, the personal representative cannot now be allowed to take advantage of that neglect in enforcing a claim of her own; quite possibly when it is the duty of the personal representative to give the notice, such a principle applies. Clark v. Collins, 31 Mo. 260, 261; In re Estate of Ward, 12 Ohio Cir. Dec. 44, 50; 34 C.J.S. Executors and Administrators § 411, page 188. It does not follow, however, that Mrs. Hart was barred in this case. While the general notice section of the Probate Code of 1955, Section 472.100, par. 2, subpar. (2), as amended L. 1957, page 829, Section 1, speaks of the " * * * person at whose instance any notice by publication is required," Section 475.140, which seems to have been adopted as it was originally drafted, does not even require the guardian to sign the notice, but provides instead that " * * * [t]he *clerk* * * * *shall cause* to be published * * * a notice of the appointment of the guardian"; and such materials as we have concerning the legislative history of Section 475.140 and its cognate statute relating to decedents' estates, Section 473.033,[4] indicate that it was the draftsman's intention to relieve the personal representative of any duty to prepare and publish the notice. We cannot, therefore, read into Section 475.140 any duty on the part of the *guardian* to cause the notice to be published, in the face of plain statutory language and apparent legislative intention to the contrary. We

---

3. Which was codified in the 1949 revision as Section 458.210.

4. We acknowledge the cooperation and assistance of the General Assembly's Committee on Legislative Research.

do not say there could never be a case where the personal representative would be barred from asserting his own claim because of his inequitable neglect of duty or overreaching in delaying its presentation, but no such conduct on the claimant's part is shown here.

■ Nor can we agree with appellant's argument that there has been a former adjudication of the respondent's claim. The real difficulty with the appellant's position is that his theory has considerably outrun his proof. In order to establish his defenses of limitation and res judicata, the appellant offered the probate court's file on the guardianship in evidence in toto, and his offer was refused. The appellant then resorted to the position that the trial court, since it was in effect sitting as a probate court, should take judicial notice of all that had occurred in the probate court prior to the assertion of the respondent's claim, even though no proof was made of the record proceedings. We agree that there are instances in which the files in another cause in the same court may be received to determine if there has been a former adjudication, Arata v. Monsanto Chemical Co., Mo., 351 S.W.2d 717, 721–722 [5], but the file offered here simply leaves one in doubt as to what actually occurred in the guardianship proceeding. It may be that the probate court at first considered that Miss James' guardianship estate could be closed under the procedure outlined in Section 475.320, par. 1, but there is no evidence of any final adjudication that "all obligations of the estate * * * [had] been paid * * *" as required by that statute; rather the recitations of the settlement filed are to the contrary. What is more, we know that the probate court has broad powers to set aside its own orders, Section 472.150, and we know that an administrator was actually appointed for the estate of Lucy Ann Louise James, deceased, because the parties have so stipulated. Without laboring the matter, the legal conclusions to be drawn from an inspection of the files offered in evidence are, in our view, ambiguous and equivocal; one certainly could not say that there had ever been a prior adjudication of the respondent's claim because the guardianship estate had been finally closed upon a finding that there were no claims against the estate.

■ As to the appellant's further and very similar suggestion that the trial court should have taken judicial notice of all that the probate court could have noticed, we have the opinion that the appellant misjudges the circuit court's position upon an appeal from probate court. In the first place, it would be highly unrealistic to ask the circuit judge to notice matters which actually occurred in another forum. Further, while probate matters retain their general probate character on appeal, In re Boeving, Mo.App., 388 S.W.2d 40, 49–50 [6, 7], an appeal to circuit court in a probate matter does not draw the whole record after it, Keet & Rountree Dry Goods Co. v. Williams, Mo.App., 202 S.W. 620, 622 [8, 9], nor does the circuit court acquire plenary jurisdiction over the administration of the estate; it may consider only the specific matter litigated in the probate court. In re Campbell's Estate, 274 Mo. 343, 356, 202 S.W. 1114, 1115 [2]; Bronson v. Bronson, 102 Mo. 613, 620, 15 S.W. 74, 75 [3]; State ex rel. Reis v. Nangle, Mo.App., 349 S.W.2d 508, 515–519 [10]. The appellant's points must be disallowed.

The appellant's final point deals with the claimant's interrogation of witnesses. As we understand the appellant, he maintains that the respondent's repeated inquiry whether Miss James' relatives had assisted her or not was prejudicial to him, because the jury would understand that the appellant had not rendered any assistance to Miss James, when he should have done so, but that the claimant, who was not related to Miss James, did so and therefore had a worthier claim to "what she [Miss James] had left."

■ We think this point is without substantial merit. When counsel objected to

the course of inquiry which he now claims was prejudicial—and he did so at several points—the relief for which he moved was granted by the trial court, either by sustaining his objection or by both sustaining his objection and instructing the jury to disregard the question and answer. What is more, we do not believe a jury would necessarily conclude that the claimant's counsel referred specifically and only to the appellant. The evidence was, in fact, that "* * * almost all the people down there [in the neighborhood] were relatives, distant or close to her [Miss James]." As the matter is briefed and argued, we perceive no error prejudicial to the appellant.

We find no reversible error upon the record presented, and the judgment is therefore affirmed.

RUARK, P. J., and STONE, J., concur.