**Freda McMURRY, Plaintiff–Appellant,**

v.

**Charles MAGNUSSON and Cecil Lindsay, Defendants–Respondents.**

No. 61831.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1993.

Richard R. Kordenbrock, The Hullverson Law Firm, St. Louis, for plaintiff-appellant.

Thomas Magee, St. Louis, for Charles Magnusson.

Arthur F. Clark, St. Louis, for Cecil Lindsay.

CRANDALL, Presiding Judge.

Plaintiff, Freda McMurry, appeals from the judgment in her favor, entered pursuant to a jury verdict, against defendant, Charles Magnusson, in a personal injury action which arose as a result of an automobile accident. Plaintiff also appeals from a judgment in favor of defendant, Cecil Lindsay, in the same trial. We affirm in part and reverse and remand in part.

The evidence, viewed in the light most favorable to the plaintiff, established that on November 5, 1988, plaintiff, a sixty-two-year-old widow, was a passenger in an automobile driven by Magnusson. Magnusson ran into the rear of a vehicle driven by defendant, Cecil Lindsay, who stopped to avoid hitting a camper shell lying in his lane of traffic. The camper shell had blown off of a truck owned and operated by defendant, Richard Crandall.

As a result of the collision between Magnusson's and Lindsay's vehicles, plaintiff suffered back injuries for which she was hospitalized. Following hospitalization, plaintiff, who lived in St. Louis, moved into

her sister's home in St. James, Missouri. Her sister cared for her for approximately four months.

After trial, the jury returned a verdict in favor of plaintiff and against defendant-Magnusson and assessed damages in the amount of $25,000.00. The jury also found against plaintiff and in favor of defendants, Lindsay and Crandall. Plaintiff later dismissed her cause of action against defendant-Crandall.

In her first point, plaintiff contends that the trial court erred in giving a withdrawal instruction regarding the evidence of damages she incurred for the home health care provided by her sister. Plaintiff argues that the reasonable value of her sister's services was an appropriate element of recoverable damages which the jury should have considered in reaching its verdict.

After plaintiff was released from the hospital she was unable to walk without help and to care for herself. She was also on medication for back pain. She left her own home in St. Louis and went to stay at her sister's home in St. James, Missouri. Her sister cared for her from November 10, 1988 to March 24, 1989. During that time, her sister provided for all her personal and medical needs. Plaintiff testified that she agreed to pay her sister for the services her sister rendered:

[Plaintiff's Counsel]: Have you promised to pay her for [services]?

[Plaintiff]: I told her I would.

[Plaintiff's Counsel]: And have you come up with a figure for what that service is worth?

[Plaintiff]: Well, I told her that that [sic] I thought she deserved as much as a home health nurse would get.

[Plaintiff's Counsel]: Is that the home health nurse that came in to see you?

[Plaintiff]: Yes, that came in and visited me for fifteen minutes. I thought that she deserved as much for all day as the other one did for fifteen minutes, so I told her I would give her seventy-five dollars a day.

Later, plaintiff testified during cross-examination as follows:

[Defense Counsel]: Well, let me ask you about this seventy-five dollar charge that you have arranged with your sister. This is what you promised to pay her, correct?

[Plaintiff]: I thought that was fair.

[Defense Counsel]: Before moving in did your sister ask you to pay her any money?

[Plaintiff]: No, not really.

[Defense Counsel]: She invited you to move in with her because she's your sister, correct?

[Plaintiff]: Mainly.

As of the time of trial, plaintiff had not paid her sister for services rendered.

At the close of the evidence the trial court submitted the following withdrawal instruction, patterned on MAI 34.02 [1978 Revision], to the jury:

### Instruction No. 7

The evidence of damages for plaintiff's home care from her sister is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

In overruling plaintiff's objection to the instruction, the court reasoned that "the services the sister rendered were gratuitous and ... not an element of damages that can be submitted to the jury...."

MAI 34.01 [1978 Revision] provides: "A withdrawal instruction is only to be given when during the course of the trial a false issue, improper evidence, or evidence of an abandoned issue has been injected." The instruction is intended, not just to withdraw the evidence, but to clarify what the jury is to consider in assessing damages. MAI 34.02 [1978 Revision], Committee Comment (1969 New).

Magnusson claims that the withdrawal instruction was proper because in Missouri, in a personal injury action, where a plaintiff was nursed by a family member and there was no express contract to pay for such services, the expenses claimed for such services are not a proper element of damages. *See Gibney v. St. Louis Transit Co.*, 204 Mo. 704, 103 S.W. 43 (Mo.1907); *Baldwin v. Kansas City Rys. Co.*, 218 S.W. 955 (Mo.App.1920). In both *Gibney* and *Baldwin*, the courts declined to permit

the jury to consider plaintiffs' evidence of expenses they incurred when they were nursed through their injuries by their children. The services rendered to plaintiffs involved the performance of the "ordinary offices of affection," but no legal liability upon the part of the persons for whom the services were rendered. *See Gibney,* 103 S.W. at 48. "The injured person cannot recover as expenses the value of the services of any one of his family in nursing him, unless there was an express agreement by him to pay therefore." *Baldwin,* 218 S.W. at 956.

Where valuable service is rendered by one person for another and such is accepted by the person for whom such service is performed, the law will presume an implied promise to pay. *Boyher v. Gearhart's Estate,* 367 S.W.2d 1, 4 (Mo. App.1963). When no family relationship exists, the law presumes an intent to charge for services rendered. *Sturgeon v. Estate of Wideman,* 608 S.W.2d 140, 141 (Mo.App.1980), *after remand rev'd on other grounds,* 631 S.W.2d 55 (Mo.App.1981). The defense of a family relationship is an affirmative defense and defendant has the burden of proof. *Id.; Schanz v. Estate of Terry,* 504 S.W.2d 653, 655 (Mo.App.1974). The existence of a family relationship, once it is established, gives rise to a presumption that services rendered were intended to be gratuitous. *Boyher,* 367 S.W.2d at 4. The burden in such cases rests upon plaintiff to rebut such a presumption by evidence tending to show that the parties intended and understood that the services were to be paid for by the recipient thereof. *Id.*

Here, the initial question is whether the relationship between plaintiff and her sister, as a matter of law, gave rise to a presumption of gratuitous services. If so, in the absence of evidence to the contrary, the jury was properly precluded from considering the cost of home care as an element of plaintiff's damages.

Whether a family relationship existed is a factual issue. *Schanz,* 504 S.W.2d at 657. The term "family" is one of great flexibility and is capable of many different meanings according to the context in which it is used. *Boyher,* 367 S.W.2d at 5. In the context of a zoning ordinance, the definition of family may be based on the biological or legal relationships among the household members. *See, e.g., City of Ladue v. Horn,* 720 S.W.2d 745 (Mo.App.1986). The determination of whether a relationship is sufficient to give rise to the presumption that services rendered and accepted were gratuitous, however, does not turn on whether the parties are related by blood or affinity, except where the relationship is that of parent and child. *Schanz,* 504 S.W.2d at 657; *Boyher,* 367 S.W.2d at 4. For purposes of raising the presumption that services were rendered gratuitously, a family is defined as "a collective body of persons under one head and one domestic government, who have reciprocal, natural, or moral duties to support and care for each other." *Boyher,* 367 S.W.2d at 5; *see also Sturgeon,* 608 S.W.2d at 142.

In the case before us, the evidence was that plaintiff and her sister were adults who had lived apart for years. Each sister lived some distance from the other, in her own home. Plaintiff moved in with her sister, arguably not for the purpose of establishing a family relationship but for the purpose of receiving the care she needed and was unable to provide for herself. *See Sturgeon,* 608 S.W.2d at 142; *compare Farris v. Faris' Estate,* 212 S.W.2d 71 (Mo. App.1948) (because nephew lived with aunt and uncle in their home off and on for 27 years and because of the family relationship shown, nephew failed to rebut presumption that his services were gratuitous). It was a matter for the jury to determine from all the circumstances whether a family relationship existed between plaintiff and her sister, and thus whether the services rendered by her sister were gratuitous in nature.

In the absence of a family relationship, the law will presume an implied promise on plaintiff's part to pay for her sister's services. *See Boyher,* 367 S.W.2d at 5. In addition, there was evidence that plaintiff made a promise to pay. Assuming that the sister's services were not rendered gratuitously, the promise to pay, even if made

after the fact, may give rise to an express contract.[1]

Whether there was an implied or express contract or whether the services were rendered as a gift from sister to sister was a question of fact. The jury should have been able to consider whether the expenses plaintiff claimed for her sister's services constituted a proper element of damages. The trial court erred in giving the withdrawal instruction to the jury. Plaintiff's first point is granted.

In her second point, plaintiff contends that the trial court erred in permitting counsel for defendant-Crandall to make the following statement in closing argument: "It's clear under the law that the mere happening of an accident or occurrence is no proof of negligence. This is a long settled principal in the law." Plaintiff posits that this statement not only improperly instructed the jury as to the law, but also was prejudicial to her in that it enabled the jury to conclude that defendant-Lindsay was not negligent in stopping his vehicle in a lane reserved for moving traffic.

■ Instructing the jury is the province of the trial court; and counsel should not, by argument, undertake to instruct the jury. *Stroh v. Johns*, 264 S.W.2d 304, 307 (Mo.1954). Misstatements of law are impermissible during closing argument; and a positive and absolute duty, as opposed to a discretionary one, rests upon a trial judge to restrain such arguments. *Titsworth v. Powell*, 776 S.W.2d 416, 422 (Mo.App.1989). On the other hand, the permissible field of argument is broad; and as long as counsel does not go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or a claim or a defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments. *Id.*

■ Even assuming that it was error for defendant-Crandall's counsel to make the challenged statement, plaintiff's claim of error alleged that the resultant prejudice accrued only to defendant-Lindsay, not to defendant-Crandall who was dismissed out of the lawsuit. It was clear that counsel who made the argument represented only one party, Crandall; and that his remarks were referenced only to Crandall. For plaintiff to assert prejudice that could be transferred to defendant-Lindsay, it would have been necessary for the comments of defendant-Crandall's counsel to be so egregious as to taint the entire proceedings. Under those circumstances, the only remedy would be for the trial court to grant a mistrial. Here, counsel's argument did not rise to that level. Plaintiff was not prejudiced as to defendant-Lindsay. Plaintiff's second point is denied.

We affirm the judgment of the trial court as to the liability of defendant-Magnusson. We reverse as to damages only and remand the cause for retrial solely on that issue. The judgment in favor of defendant-Lindsay is affirmed.

PUDLOWSKI and GRIMM, JJ., concur.

---

1. A promise to pay for a benefit already received is guided by 1 Restatement (Second) of Contracts § 86 (1979):

§ 86. Promise for Benefit Received
1) A promise made in recognition of a benefit previously received by the promisor from the promisee is binding to the extend necessary to prevent injustice.

(2) A promise is not binding under Subsection (1)
(a) if the promisee conferred the benefit as a gift or for other reasons the promisor has not been unjustly enriched; or
(b) to the extent that its value is disproportionate to the benefit.